In re GOODMAN'S ESTATE.
GOODMAN v. COMMISSIONER OF INTERNAL REVENUE.
No. 10790.

United States Court of Appeals.
Third Circuit.

Argued Oct. 17, 1952.

Decided Nov. 26, 1952.

Maurice J. Klein, Philadelphia, Pa. (Jesse A. Kline, Philadelphia, Pa., on the brief), for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., on the brief), for respondent.

Before MARIS, GOODRICH and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Petitioner, the executor of the estate of the deceased taxpayer, seeks to take advantage of the provisions of Section 112(f)

of the Internal Revenue Code.[1] That section provides, so far as is relevant here, that no gain shall be recognized if property, as a result of an exercise of the power of condemnation, is involuntarily converted into money which is forthwith in good faith, under the Commissioner's regulations, expended in the acquisition of similar property. The Commissioner's ruling, sustained by the Tax Court,[2] was that the reinvestment requirements of the section are satisfied only if carried out in the taxpayer's lifetime and that reinvestment by the executor of the estate of a deceased taxpayer, although satisfying all other requirements of the section, is not enough to enable the estate to claim the statutory benefit.

The stipulation of facts was adopted by the Tax Court, and the following brief statement is sufficient for an understanding of the problem presented.

Isaac Goodman, the decedent, owned an undivided one-half interest in a building in Philadelphia. The Commonwealth of Pennsylvania condemned the greater part of the building, and he received his share of the condemnation award on October 18, 1944. He died two days later, only a part of the award having been expended in the acquisition of property similar to that condemned. His executor continued the acquisition of such property and within sixteen months had exhausted the award. Although a substantial gain was realized from the award, in making decedent's final income tax return, the executor did not report that gain, justifying the omission by reliance on Section 112(f). The Commissioner's determination of a deficiency was upheld by the Tax Court, and this petition for review followed.

It is conceded that all but one of the statutory requirements have been satisfied.[3] Thus, the only question is the novel and very narrow one of whether the statutory right to postpone recognition of gain dies with the taxpayer. We hold that it does not.

Our reading of Section 112(f) convinces us that its primary concern is the fact of reinvestment in the prescribed manner. There is not even a hint as to who must do the reinvesting. The entire section is stated in the passive voice, thus indicating that Congress was less concerned about the identity of the actor, so long as he acted on behalf of the taxpayer, than it was about whether he acted in the statutory fashion. We are not persuaded, therefore, that a literal interpretation of the section supports the Commissioner's position. In reply, the

---

1. Section 112(f) of the Internal Revenue Code is as follows:

"(f) Involuntary conversions. If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain)." 26 U.S.C. § 112(f).

This section was amended in 1951, but the amendments do not affect the tax problem here. Pub.L.No.251, 82d Cong., 1st Sess., § 1, Oct. 31, 1951.

2. 17 T.C. 1017 (1952).

3. The Tax Court concluded that the expenditures were made "forthwith" and that the property acquired was similar to that converted. That the "forthwith" requirement was satisfied is shown by Estate of George Herder, 1937, 36 B.T.A. 934, affirmed sub nom. Herder v. Helvering, 70 App.D.C. 287, 106 F.2d 153, certiorari denied 1939, 308 U.S. 617, 60 S.Ct. 262, 84 L.Ed. 515; August Buckhardt, 1935, 32 B.T.A. 1272; Paul Haberland, 1932, 25 B.T.A. 1370. Petitioner's good faith and the similarity of the property acquired were not attacked.

Commissioner points to Treasury Regulation 111, Section 29.112(f)(1) and (2) [4] as the basis for the contention that reinvestment must be made during the taxpayer's lifetime. The argument is that the frequent repetition of the word "taxpayer" in the regulation shows that the benefits of Section 112(f) are available only if the required acts are performed during his lifetime. We cannot accept such a narrow interpretation of the word "taxpayer." As a matter of semantics, it would be difficult to talk for very long about paying taxes, and still make sense, without here and there using the word "taxpayer." Even the Commissioner admits that the word is sufficiently broad to permit the taxpayer's agent to perform the reinvestment duties.[5] Petitioner further answers this argument of the Commissioner by showing the rather absurd result of its literal application. The regulations set out the many proofs which the taxpayer must establish to bring himself within Section 112(f). Suppose a taxpayer reinvests the proceeds of a condemnation award in compliance with the section, and then he dies before he, himself, can make the proofs. Surely, in that case, his estate would not be denied relief. Another instance may be cited to show the error of the Commissioner's position. Section 112(f) allows nonrecognition of the gain if the award is put into a replacement fund and later used in acquiring property similar to that condemned. The regulations require that the taxpayer obtain the Commissioner's permission to establish a replacement fund, and the application for permission must contain a declaration that the taxpayer will proceed as expeditiously as possible to replace the property condemned. Suppose the requisite permission is obtained, but, before the replacement fund can be expended, the taxpayer dies. We doubt that the Commissioner, faced with those facts, would seriously stand on

---

4. Treasury Regulation 111.

"Sec. 29.112(f)–1. Reinvestment of Proceeds of Involuntary Conversion.

\* \* \* \* \* \* \*

"In order to avail himself of the benefits of section 112(f) it is not sufficient for the taxpayer to show that subsequent to the receipt of money from a condemnation award he purchased other property similar or related in use. The taxpayer must trace the proceeds of the award into the payments for the property so purchased. It is not necessary that the proceeds be earmarked, but the taxpayer must be able to prove that the same were actually reinvested in such other property similar or related in use to the property converted. The benefits of section 112(f) cannot be extended to a taxpayer who does not purchase other property similar or related in service or use, notwithstanding the fact that there was no other such property available for purchase.

\* \* \* \* \* \* \*

"It is incumbent upon a taxpayer 'forthwith' to apply for and receive permission to establish a replacement fund in every case where it is not possible to replace immediately. If an expenditure in actual replacement would be too late, a request for the establishment of a replacement fund would likewise be too late.

"Sec. 29.112(f)–2. Replacement Funds. In any case where the taxpayer elects to replace or restore the converted property but it is not practicable to do so immediately (for example, because of the taxpayer's inability to obtain priorities, or because of other wartime restrictions), he may obtain permission to establish a replacement fund in his accounts in which part or all of the compensation so received shall be held, without deduction for the payment of any mortgage. In such a case the taxpayer should make application to the Commissioner on Form 1114 for permission to establish such a replacement fund, and in his application should recite all the facts relating to the transaction and declare that he will proceed as expeditiously as possible to replace or restore such property. The taxpayer will be required to furnish a bond with such surety as the Commissioner may require in an amount not in excess of double the estimated additional income taxes which would be payable if no replacement fund were established. \* \* \*" U.S.Treas.Reg. 111 (1943), 29 Code Fed.Regs. § 29.112(f) (1) & (2) (Cum.Supp.1949).

5. The stipulation shows that the first reinvestment here was made by decedent's attorney in fact on the day of death. While this reinvestment, because of its amount, does not affect the tax problem here, the Commissioner does not object to it because it was not made by the decedent in person.

898

the contention advanced here, that the executor could not make the reinvestment. We think that a fair reading of Section 112(f) allows postponement of recognition of the gain even though the reinvestment is made by the executor after the taxpayer's death, assuming, of course, satisfaction of all other requirements. Having so construed the section, we would be forced to declare the regulations invalid if they attempted to deny that right. We need not decide that question, however, for we are of the opinion that the regulations may be construed as being consistent with Section 112(f). As we have said, the recurring use of the word "taxpayer" in the regulations need not be read as meaning the taxpayer, during his lifetime. A construction more logical and more consonant with the purpose of the statute is that it means the taxpayer or one acting on his behalf, before or after his death.[6]

In further support of his view, the Commissioner argues that at the taxpayer's death his creditors, heirs, and legatees acquired rights in the fund used by petitioner in purchasing the property, thus showing that the right to make reinvestment ends with the taxpayer's death. The claims of creditors might be a complete bar to reinvestment when they so far consume the estate that there is nothing left to reinvest. But that is not this case. In any event, there is no attempt here to claim the benefit of Section 112(f) for creditors, heirs, or legatees. The taxpayer's estate is the beneficiary. Section 142(a) (2) of the Internal Revenue Code [7] requires that the executor file a return for his decedent's final taxable period. We see no reason why the executor may not do what the taxpayer could have done to perfect a right which came into being in that final taxable period.

We have given careful consideration to the other points raised by the Commissioner and find them to be without merit.

For the reasons stated, the judgment of the Tax Court will be reversed.

6. We could agree with the Commissioner's narrow view of the meaning of "taxpayer" and still hold that Section 112(f) and the regulations have been satisfied here. We take "taxpayer" to mean the person subject to the tax. See Sections 3797(a) (14) and 3801(a) (2) of the Internal Revenue Code, 26 U.S.C. §§ 3797 (a) (14), 3801(a) (2). Certainly, the decedent is no longer subject to the tax, and, thus, he is not the taxpayer. The tax will be paid, if due, out of the estate. Consequently, the estate is the taxpayer because it is subject to the tax. Furthermore, the estate, acting through the executor, made the reinvestment. Hence, the benefits of Section 112(f) are available to the estate.

7. 26 U.S.C. § 142.