ESTATE OF GEORGE W. JAYNE, DECEASED, MARION P. JAYNE, EXECUTRIX, AND MARION P. JAYNE, SURVIVING SPOUSE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8453–71.   Filed March 14, 1974.

---

*Anna R. Lavin*, for the petitioner.
*James F. Hanley, Jr.*, for the respondent.

WILES, *Judge:* Respondent determined a deficiency in the income tax of petitioner for the taxable year 1966 in the amount of $219,846.61. Several issues have been settled by the parties. The only issue remaining for our consideration is whether the acquisition of property by a surviving spouse in her own right qualifies as a replacement of property for purposes of applying the nonrecognition provisions of section 1033.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

The petitioner is Marion P. Jayne, who is a party to this action in her capacity as executrix of the Estate of George W. Jayne and in an individual capacity as surviving spouse of George W. Jayne (hereinafter referred to as decedent). At the time the petition was filed, petitioner resided in Palatine, Ill. Petitioner and decedent filed a joint Federal income tax return for the taxable year 1966 with the district director of internal revenue at Chicago, Ill.

In 1959, decedent acquired solely in his own name a horse stable and grounds known as Tri-Color Farm. That property consisted of approximately 100 acres of which 10 acres were used in the operation of the stable and the remaining acreage consisted of unimproved real estate. The Board of Junior College District No. 301, Cook County, Ill., threatened to condemn this property on March 14, 1966. After a period of negotiations, the property was sold to the Board of Junior College District No. 301 on November 10, 1966. The proceeds of the sale, after reduction for title costs, revenue stamps, appraisal, and attorney fees, were $919,481.25. Decedent's adjusted basis in the property at the time of the sale was $230,971.11. On the 1966 joint income tax return, decedent elected to defer recognition of the gain realized on the sale under section 1033.

Upon receipt of the proceeds from the sale of Tri-Color Farm, decedent purchased certificates of deposit in his own name in the amounts of $500,000, $130,000, and $100,000. He also established a "construction" account in a bank in the amount of approximately $50,000. Believing that he was going to die, decedent transferred two certificates of deposit in the amounts of $500,000 and $100,000 into joint tenancy with petitioner. Upon decedent's death, the latter two certificates of deposit passed to petitioner by operation of law.

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise indicated.

On May 26, 1967, decedent entered into a contract to purchase 6 acres of real property for $40,000 located at the southwest corner of Dundee and Quinten Roads, Dundee, Ill. (hereinafter referred to as the Dundee property). Decedent received a warranty deed for the Dundee property on August 5, 1967. In June 1967, decedent undertook action to have the Dundee property rezoned for use as a commercial riding and training stable. At that time decedent was unsuccessful and litigation ensued; however, on May 25, 1970, the rezoning litigation was concluded in favor of decedent. Due to problems encountered in obtaining rezoning on the Dundee property, decedent requested and received annual extensions of time for replacement of the Tri-Color Farm property through December 31, 1970.

Shortly after the acquisition of the Dundee property, decedent consulted with Arthur N. May Builders, Inc. (hereinafter referred to as May Builders), concerning plans for the construction of a riding and training facility to be built on the Dundee property. May Builders submitted to decedent detailed designs, plans, proposals, and cost estimates for the construction of a riding facility. In May 1968, May Builders submitted a construction agreement for a riding and stable complex to be built for a basic price of $257,032.48. In May 1969, May Builders submitted a bill to decedent in the amount of $2,380 for designing the riding area to be built on the Dundee property.

Decedent died testate on October 28, 1970. Petitioner was appointed executrix on December 10, 1970, pursuant to the last will and testament of the decedent and letters testamentary issued by the Probate Division, Circuit Court, Cook County in proceeding 70 P 9210.

In a will, dated April 17, 1969, decedent made the following disposition of his property. Decedent devised $22,000 to two sisters and two employees. To petitioner, decedent devised all household effects and property; all automobiles owned at time of death; all money in checking accounts, savings accounts, and safe-deposit boxes; and an undivided one-half interest in the residuary estate. The remaining one-half interest in the residuary estate was devised to petitioner as trustee for decedent's children. With regard to his interests in commercial riding facilities, decedent declared as follows:

NINTH: I hereby direct my Executor herein named to sell, convey and dispose of and convert into money all of the assets of my businesses consisting of stable and riding academies, including all horses, trucks, equipment and personal property and any real estate then being occupied and used in the operation of such businesses within a period of two (2) years following the date of my demise; provided, however, that if it appears to my said Executor that the beneficiaries of this, my Last Will and Testament, benefit to a greater extent by the retention of the real estate used and occupied in the operation of any such business and provided that such real estate is not used as a stable or riding academy, but can be used or rented out for other uses and purposes, then my

said Executor shall have the right to have said real estate retained. It is mandatory, however, that all personal property of such businesses be disposed of within said period of time.

On November 13, 1970, petitioner requested the district director of internal revenue of Chicago, Ill., for an additional extension of time within which to make replacement of property under section 1033. By letter dated February 4, 1971, the district director refused to grant any further extension for the reasons stated as follows:

Under Revenue Ruling 64–161 it is held that the nonrecognition of gain benefits under section 1033 are limited to the taxpayer individually, who held the property that was involuntarily converted.

Since the death of George W. Jayne terminated the period for replacement of converted property, no further extension can be granted.

After the decedent's death, petitioner initially considered building the stable which had been designed by May Builders. This idea was abandoned, however, when a threat was made on her life. Thereupon, she decided to construct and operate a commercial tennis club business. Petitioner attempted to utilize the Dundee property; however, she could not obtain rezoning for its use as a tennis club.[2] On June 4, 1971, petitioner acquired in her own name approximately 2 acres of land in Schaumberg, Ill. (hereinafter referred to as Schaumberg property). Petitioner then had a tennis club facility called the Right Club constructed on the Schaumberg property. The cost of constructing the Right Club was at least $649,214.02, including the cost of the land. Petitioner financed construction of the Right Club with funds obtained from the certificates of deposit which became hers upon decedent's death and by obtaining a mortgage in her own name for $495,000 on the building, using the remaining funds as collateral and on which she was personally liable. The Right Club began operations on October 1, 1971. Petitioner personally operated the activities of the tennis club. She paid all the bills and reported all income and deductions on her individual Federal income tax return for 1971.

In May 1972, petitioner in her individual capacity, invested $20,500 in a trust known as Carefree Venture, Carefree, Ariz. The Carefree Venture owned unimproved real estate in Arizona which was eventually to be developed as some form of recreational facility.

On February 22, 1971, petitioner, as executrix, filed an inventory of the decedent's estate in the probate court in Cook County. The total value of the assets subject to probate administration was $468,944.89. As of December 14, 1972, disbursements totaling $300,213.65 were made by or on behalf of decedent's estate. In addition, the probate court allowed a widow's award of $35,000 to petitioner and minor

---

[2] The Dundee property was ultimately sold by the estate in 1971.

children's award of $14,000. Unpaid claims against the estate are as follows: May Builders in the amount of $2,380,[3] Mr. Robert Haskins in the amount of $7,500, and the Internal Revenue in the amount of the deficiency. There remains unpaid estimated legal fees in the amount of $25,450.

In the statutory notice of deficiency dated October 20, 1971, respondent determined that section 1033 is not applicable to the decedent's 1966 income tax return for reasons as follows:

It is determined that the long-term capital gain of $694,028.89 (before 50% deduction) you realized from sale of TRI-COLOR Farms in the year 1966 is recognized and is includible in your income for the year 1966 because of your failure to replace with property similar or related in service or use to TRI-COLOR Farms prior to termination on October 28, 1970 of the extension of time to replace the said property without recognition of the gain, under the provisions of section 1033 of the Code.

In an amended answer filed with the Court on January 29, 1973, respondent further alleged that (a) the decedent's probate estate did not have sufficient assets after providing for payment of decedent's debts to acquire replacement property, (b) no statutory replacement has been made by the decedent's representative, and (c) the acquisition of the Schaumberg property and subsequent improvements thereto (construction of the Right Club) were those of Marion P. Jayne in her individual capacity and not as a personal representative of the decedent.

OPINION

The preliminary issue is a procedural one. Petitioner contends that the additional arguments raised by respondent in his amended answer constitute "new matter" within the meaning of Rule 32, Tax Court Rules of Practice,[4] and, therefore, respondent bears the burden of proof with regard to those arguments. We do not accept petitioner's contention.

The notice of deficiency informed petitioner of respondent's position that the nonrecognition provisions of section 1033 did not apply to the gain realized on the sale of Tri-Color Farm. Petitioner then had the burden of proving that section 1033 did apply, which necessarily requires proof that decedent had met all the prerequisites of section 1033. This Court has held that a new position taken by respondent is not necessarily a "new matter," especially when it merely clarifies or develops the original determination without being inconsistent or increasing the amount of deficiency. *Rozelle McSpadden*, 50 T.C.

---

[3] At the time of the trial this amount had been allowed by the probate court but not yet paid by the estate.

[4] This refers to the Tax Court Rules as in existence prior to Jan. 1, 1974.

478, 492–493 (1968). The arguments raised in respondent's amended answer involve the same Code section, are consistent with his original determination, and do not affect the amount of the deficiency. Respondent's amended answer merely questions some of the elemental facts that petitioner must prove under section 1033. Petitioner retains the burden of proof.

The issue is whether the acquisition of property by a surviving spouse in her own right qualifies as a replacement of property under section 1033.[5] Section 1033 [6] allows a taxpayer to elect nonrecognition of gain realized from the sale of property under threat of condemnation provided other property similar or related in service or use is acquired during the replacement period. In the present case, there is no question that the property was sold under threat of condemnation or that decedent made a proper election to utilize section 1033 in 1966. Respondent has conceded that a commercial tennis club, if acquired by decedent, would be similar or related in use to the riding stable; however, if it is determined that a surviving spouse can make acquisition in her own name under section 1033, he alternatively

---

[5] Neither party raised the issue of whether petitioner would be considered to be the taxpayer under sec. 1033 by virtue of filing a joint return. We, therefore, express no opinion with respect to this question.

[6] SEC. 1033. INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

* * * * * * *

(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph :

(A) NONRECOGNITION OF GAIN.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. * * *

* * * * * * *

(B) PERIOD WITHIN WHICH PROPERTY MUST BE REPLACED.—The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending—

(i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

(ii) subject to such terms and conditions as may be specified by the Secretary or his delegate, at the close of such later date as the Secretary or his delegate may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe.

argues that the Carefree Venture trust interest is not similar or related in use. Respondent has also conceded that decedent made a partial replacement by acquisition of the Dundee property.

The right to utilize the nonrecognition provisions of section 1033 does not terminate per se upon the death of the taxpayer. *In re Goodman's Estate* v. *Commissioner*, 199 F. 2d 895 (C.A. 3, 1952), reversing 17 T.C. 1017 (1951) ; *Estate of John E. Morris*, 55 T.C. 636 (1971), affirmed per curiam 454 F. 2d 208 (C.A. 4, 1972). The underlying rationale on which these cases are based is that reinvestment is made by a person or persons acting on behalf of the deceased taxpayer. A person found to be acting on behalf of the deceased taxpayer is given the same rights of election and replacement under section 1033 as the taxpayer possessed prior to his death.

Petitioner contends that her acquisitions of the Right Club and interest in the Carefree Venture were on behalf of the decedent and, therefore, effectuated replacements of property for purposes of applying section 1033. Respondent contends that petitioner acquired these properties on her own behalf and, as such, they do not constitute replacements under section 1033. Under the facts of this case, we hold that petitioner was not acting on behalf of the decedent in her acquisition of either the Right Club or the Carefree Venture interest.

Neither *In re Goodman's Estate*, *supra*, nor *Estate of John E. Morris*, *supra*, both of which are cited by petitioner as support for her position, is applicable to the present situation. In the *Goodman* case, the Third Circuit held that an executor who acquired replacement property with funds from an estate large enough to cover such expenditures plus estate expenses was acting on behalf of the deceased taxpayer. That decision clearly recognizes that an executor has the duty of carrying forward the wishes of a deceased taxpayer as expressed in his will for the benefit of the estate. An executor thereby acts in a representative capacity. *Miller Music Corp.* v. *Daniels, Inc.*, 362 U.S. 373 (1960) ; *Fox Film Corp.* v. *Knowles*, 261 U.S. 326 (1923). In that capacity, an executor merely stands in the shoes of the deceased. *Ilg* v. *Continental Illinois National Bank & Trust Co.*, 94 Ill. App. 2d 143, 236 N.E. 2d 316, 320 (1st Dist. App. Ct. 1968). Furthermore, the executor is generally under the direction, supervision, and control of a State probate court. *In Re Wolfner's Estate*, 58 Ill. App. 423, 207 N.E. 2d 724 (1st Dist. App. Ct. 1965), and 33 C.J.S., Executors and Administrators, sec. 147(a). All of these factors indicate that an executor acts on behalf of the deceased taxpayer, and, therefore, should be accorded the same right that the deceased taxpayer possessed under section 1033.

In *Estate of John E. Morris*, *supra*, reinvestment was made by testa-

mentary trustees rather than the executors of the estate. This Court held that, under the circumstances present in that case, the testamentary trustees were acting on behalf of the deceased taxpayer. That decision presented a unique factual situation. The replacement of property was made with funds that initially were part of the deceased taxpayer's estate; and the trust was also established by the taxpayer's will. The funds were transferred from the estate to the trust by a Maryland State court handling the probate proceedings. Also, the reinvestment of funds in similar property was pursuant to detailed plans that had been approved by the taxpayer prior to his death. In *Morris*, this Court noted that:

Here, the decedent was the architect of the plan of replacement and had, prior to his death, set in motion the actions to implement that plan. He was precluded from completing those actions by the untimely event of death. Thereafter, his successors in interest, proceeding in strict accordance with the decedent's plan, finished the job. Under these circumstances, although the issue is not free from doubt, we think that it can be said that, for the purpose of perfecting the right of election conferred upon the decedent by section 1033(a)(3), the testamentary trustees were acting on his behalf in making the replacement. [55 T.C. at 642.]

On the basis of the detailed plans and activities of the deceased prior to his death, the executors of the estate determined that it was the intent of the deceased taxpayer to make such replacement of the condemned property. They effectuated that intent by transferring funds to the testamentary trust for the actual replacement strictly in accordance with the decedent's plans. The transfer, however, was made only after approval by the State probate court.

In this case, petitioner received approximately $600,000 on decedent's death as her interest in jointly owned certificates of deposit. Under the laws of the State of Illinois, the survivor of a joint tenancy becomes the absolute owner of the entire property, title passing immediately on death by operation of law. *Bonczkowski* v. *Kucharski*, 13 Ill. 2d 443, 150 N.E. 2d 144 (1958); *People* v. *Varel*, 351 Ill. 96, 184 N.E. 209 (1932). The joint tenant who survives does not take the interest of the other as successor, but by the right of conveyance which created the joint tenancy. *Klajbor* v. *Klajbor*, 406 Ill. 513, 94 N.E. 2d 502 (1950). Any actions taken by petitioner using this property represent activities on behalf of her own interest in the property rather than on behalf of the decedent. She, therefore, cannot be accorded the privileges accorded to the decedent or his successor in interest under section 1033.

The fact that petitioner was also the executrix of the estate is irrelevant, for the acquisitions of property were made in her individual capacity utilizing funds which became hers by operation of law. Peti-

tioner acquired the Schaumberg property in her own name using her own funds. To finance construction of the Right Club, petitioner utilized the funds obtained by operation of law from decedent and borrowed $495,000 for which she was personally liable. Petitioner operated the Right Club as a sole proprietorship, paying all its bills and reporting all income and deductions on her individual return. Petitioner presented no evidence that indicated at any point during this time that she made known to those with whom she was dealing that she was acting as a representative of decedent's estate.

Petitioner's duties as executrix of decedent's estate had no relation or control over the use of funds she received in her individual capacity and chose to invest in a tennis club and a trust interest. Had she purchased the property on behalf of the estate using estate funds, the property would have been subject to the residuary clause of decedent's will, and the children would have been entitled to a one-half interest held in trust by petitioner. In this case, petitioner took the property in her own name and reported all income as her own, reflecting the fact that she merely purchased property on her own behalf. The same argument is true for acquisition of an interest in the Carefree Trust. Therefore, we hold that petitioner was not acting in a representative capacity upon acquisition of the Right Club and the interest in the Carefree Trust.

Petitioner acquired property in her own right with funds over which she had absolute ownership. Under those circumstances, her actions cannot be considered to be on behalf of the decedent's estate. We hold that section 1033 does not apply.

Reviewed by the Court.

*Decision will be entered under Rule 155.*