KOH-I-NOOR RAPIDOGRAPH, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Koh-I-Noor Rapidograph, Inc. v. Commissioner
Docket No. 24194-82.
United States Tax Court
T.C. Memo 1986-136; 1986 Tax Ct. Memo LEXIS 472; 51 T.C.M. (CCH) 799; T.C.M. (RIA) 86136; April 7, 1986. *472 Norman A. Peil, Jr. and Joseph C. Hollywood, for the petitioner. Richard J. Sapinski and Robert A. Stern, for the respondent. KORNER
MEMORANDUM OPINION "KORNER, Judge: Respondent determined deficiencies of income tax against petitioner for its calendar years 1978 and 1979 in the respective amounts of $13,970.50 and $15,694.70. After concessions, the issues which remain for us to decide are: (a) Whether petitioner is entitled to deduct certain amounts paid to or for the benefit of petitioner's then president, Paul B. Gloe, as travel and entertainment expreses, as claimed by petitioner in its returns for the years in question, or (b) alternatively, whether petitioner is entitled to deduct any of such amounts as additional compensation to Mr. Gloe. Many of the facts herein were stipulated, and such stipulations, together with attached joint exhibits, are incorporated herein by this reference. Petitioner is a New Jersey corporation which, at the time of filing the petition herein, had its principal place of business in Bloomsbury, New Jersey. Its corporate income tax returns for the calendar years 1978 and 1979 were timely filed with respondent, whose statutory notice of deficiency *473 herein was sent to petitioner on July 30, 1982. On October 1, 1974, petitioner employed Paul B. Gloe as General Manager. At some undisclosed time subsequent thereto, Gloe became President and Chief Executive Officer of petitioner, as well as a director, and so served throughout the year 1978 and until October 1, 1979. On the latter date, Mr. Gloe resigned as Chief Executive Officer and as a director of petitioner, but continued as President (without any duties) until December 31, 1979, at which point he resigned as President. During the years 1978 and 1979, petitioner paid Mr. Gloe compensation as an employee in the respective amounts of $193,238 and $248,071. At no time was Mr. Gloe a stockholder of petitioner, nor did he have any form of ownership interest in petitioner. As part of the terms of Mr. Gloe's employment by petitioner, it was agreed that The Employee [Gloe] is authorized to incur reasonable expenses for promoting the business of the Employer [petitioner], including expenses for entertainment, travel and similar items. The Employer will reimburse the Employee for all such expenses upon presentation by the Employee, from time to time, of an itemized account of such *474 expenditures. Pursuant to the above arrangement, petitioner furnished to Mr. Gloe one or more credit cards, and paid all charges incurred thereon by Mr. Gloe. Additionally, petitioner reimbursed Mr. Gloe for various other items of out-of-pocket expense which he incurred from time to time, and based upon expense vouchers presented by Mr. Gloe to petitioner. Under office procedures established by petitioner, all employee expense vouchers and accounts presented to petitioner for reimbursement were audited by an official of the company (other than the claimant) and were further rechecked for accuracy by another official before being approved for payment to the employee. Such procedures were followed in the case of the credit card charges and reimbursement claims submitted to petitioner by Mr. Gloe until sometime in early 1978. At that time, petitioner's treasurer, who had been auditing and approving Mr. Gloe's expense accounts, become dissatisfied with the nature of the expenses which were being incurred by Mr. Gloe and refused to approve his expense accounts. Other corporate officers likewise later refused to approve the credit card charges and expense reimbursement vouchers submitted *475 by Mr. Gloe. As President and Chief Executive Officer of petitioner, however, Mr. Gloe had considerable power and autonomy. As a result, Mr. Gloe, beginning sometime in 1978, simply began approving his own expense accounts and causing petitioner to pay them. Increasing dissatisfaction with the nature and amount of Mr. Gloe's expenditures was apparently one of the factors leading to the termination of Mr. Gloe's employment with petitioner in the fall of 1979. As part of the termination agreement between petitioner and Mr. Gloe, pursuant to which the latter resigned as Chief Executive Office and Director, effective October 1, 1979, and as President, effective December 31, 1979, it was agreed that if the Internal Revenue Service should audit petitioner's income tax returns for any of the years 1976 through 1979, and should disallow any of petitioner's claimed deductions as being nondeductible personal expenses of Mr. Gloe, the latter would reimburse petitioner to the extent of three-quarters of such disallowed amounts. In order to secure this promise, it was agreed that petitioner would withhold one-half, or $40,000, of the agreed termination payment of $80,000 to Mr. Gloe until the *476 three-year statute of limitations had run on petitioner's 1979 tax year, or until conclusion of audit by the Internal Revenue Service, whichever should first occur. In its corporate income tax returns for 1978 and 1979, petitioner claimed deductions of $631,603 and $775,403, respectively, as travel and entertainment expense. Upon audit of petitioner's returns for these years, respondent disallowed the claimed travel and entertainment expense deductions in the respective amounts of $29,106 for 1978 and $34,119 for 1979. The nature and amount of the disallowed items are as shown in the table below. All such items were paid by petitioner to or for the benefit of Mr. Gloe or members of his family, except as otherwise noted. The basis for respondent's disallowance was that the items in question had not been shown to be ordinary and necessary business expenses of petitioner, nor that petitioner had met the requirements of section 274 of the Internal Revenue Code[1] *477 with respect thereto. Travel and Entertainment Expense
Amounts Disallowed
Character of Items
1978
1979
a) Airplane fares for Mr. Gloe and/or other members of Mr. Gloe's family
$ 7,895.18
$ 241.00
b) Purchases of merchandise, jewelry, etc. from various retail stores
461.36
2,188.08
c) Hotel bills and restaurant meals in various locations
6,522.42 [2] *478 2,754.33
d) Rental car expenses
394.39
e) expense of babysitters
759.00
f) Dues, fees and charges at Northampton Country Club, Easton, PA.
7,150.00 [3]
6,456.00 [3]
g) Traffic violation fine of Mr. Gloe's son
63.00
h) Costs of private airplane charters from Catlin Aviation and Presidential airways (disallowed portion only)
7,150.00 [4]
i) Cost of private airplane charter from Avia Jet
3,633.56 [5]
j) Trim expenses of Paul Gloe to Scandinavia, Marco Island, Fla., and Bermuda
7,929.00 [4]
k) Disallowances not identified in this record
5,923.65
3,704.03
$ 29,106.00
$ 34,119.00
Travel and Entertainment Expense Both issues raised by petitioner herein require us to consider the application of section 162, which provides in relevant part as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in currying on any trade or business, including -- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses *479 (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *. Since petitioner's arguments are made in the alternative, we consider them separately. I. Deductibility as business expenses under section 162 and 274.
The travel and entertainment expenses of petitioner which are in issue herein are of the type which must be justified as "ordinary and necessary expenses" of petitioner within the meaning of section 162(a). Additionally, as the table set out above indicates, they are expenses of a type which petitioner must substantiate pursuant to the requirements of section 274 and respondent's regulations thereunder. See secs. 1.274-1 through 1.274-5, Income Tax Regs. Acknowledging this, petitioner on brief has further conceded that with certain exceptions hereinafter discussed, petitioner has failed to meet the substantiation requirements of section 274 and respondent's regulations thereunder with respect to the items in issue herein. We accordingly confine our consideration to these remaining items, five in number. (a) As part of item (a) in the table *480 above, for the year 1978 respondent disallowed the sum of $1,683. The stipulated evidence shows that this amount was the cost of air fare for Mrs. Gloe in accompanying Mr. Gloe on a trip to Europe and to the Bahamas. Mr. Gloe accompanied her husband to Hamburg, Germany to attend the fiftieth anniversary celebration of a West German corporation which was one of petitioner's shareholders. The celebration began on November 16, 1978 and ended on November 18, 1978. Mr. and Mrs. Gloe departed from New York on November 12, 1978, arrived in Hamburg on November 13, 1978 and stayed until November 20, 1978. They then proceeded to London, England, spent one night and then departed to Miami where they transferred on another flight to Freeport, Bahamas, where they stayed at a hotel from November 21, 1978 to November 26, 1978. On the latter date they departed and returned to New York, being accompanied on the last leg of their trip by their sons. Mrs. Gloe was not an employee of petitioner during 1978 or 1979 nor, so far as this record discloses, at any other time. Petitioner contends that the nature and amount of the expenditure has been fully substantiated pursuant to section 274, and should *481 be allowable. The trouble with petitioner's position is that even assuming, arguendo, that the necessary substantiation requirements of respondent's regulations were met with regard to the time and amount of the expenditure, see section 1.274-5, Income Tax Regs., it still remains that there has been no demonstration that Mrs. Gloe's presence on the trip served a bona fide business purpose of petitioner. Section 274 does not grant any deductions. Sec. 1.274-1, Income Tax Regs. It is a limitation on deductions "otherwise allowable under this chapter" section 274(a)(1), which in this case means section 162(a).No doubt it was very nice trip for Mrs. Gloe, but there is no indication in this record that her presence on this trip was of any benefit to petitioner's business activities. See sec. 1.162-2(c), Income Tax Regs. We must accordingly sustain respondent's disallowance. (b) As part of respondent's disallowance shown for the year 1978 under item (c) of the above table, respondent disallowed the amount of $1,840.61 attributable to lodging expense incurred at the Galleria Plaza Hotel, Houston, Texas. The expense was attributable to Mr. and Mrs. Gloe's attendance at the International *482 Rapidographic Blueprint Association Convention held in that city from May 2, 1978 through May 7, 1978. The above facts were all stipulated and we accept them, but there is no evidence in this record to show what kind of an organization the International Rapidographic Blueprint Association was, nor what relation the affairs of this association had to do with petitioner's business. On this record, we cannot even tell what petitioner's business was. [6] Lacking any evidence as to the business purpose of this trip, we must sustain respondent's disallowance of the claimed travel expense. (c) For the year 1978 and also as part of the disallowances included under (c) of the above table, respondent disallowed the amount of $310.99. This expense was attributable to lodging *483 expenses incurred by Mr. and Mrs. Gloe at the MGM Grand Hotel, Las Vegas, Nevada, where Mr. and Mrs. Gloe attended the College Bookstore Show held in that city from April 16 to April 19, 1978. As in the case of the prior item, there is nothing in this record to show any business reason for Mr. and Mrs. Gloe to attend the College Bookstore Show on petitioner's behalf, so as to constitute an ordinary and necessary business under section 162(a), and accordingly respondent is sustained. (d) As another part of respondent's disallowance included in item (c) of the above table for the year 1978, there was the amount of $3,041.82, attributable to lodging expenses incurred at the Hyatt Regency, San Francisco, California, between April 19 and April 25, 1978. Of this total amount, expenses attributable to Mr. and Mrs. Gloe's attendance totaled $1,747.62. [7] On this trip, Mr. and Mrs. Gloe attended the American Institute of Design and Drafting Show in San Francisco, California between April 19, 1978 and April 25, 1978. As in the case of the prior items, there is no showing of any business purpose or connection between petitioner and the show for either Mr. and Mrs. Gloe. without more, we must *484 sustain respondent's disallowance of the claimed traveling expense. (e) For 1979, and as part of the disallowance under item (c) of the above table, respondent disallowed the amount of $1,596, incurred by Mr. Gloe for lodging at the Contemporary Resort Hotel, Walt Disney World, Lake Buena Vista, Florida on May 6 and 7, 1979. It was stipulated that the expense was incurred for attendance at International Rapidographic Association Convention. As in the case of the prior items, we have no information on the connection, if any, between petitioner and this association which would make attendance by Mr. Gloe thereat an ordinary and necessary business expense of petitioner under section 162. We accordingly sustain respondent, in disallowing the claimed travel expense. II. Allowance of the claimed deductions under Section 162 as additional compensation to Paul Gloe.
Prior to trial of the instant case, petitioner was permitted to amend his petition to raise a new and alternative issue, viz, that if any portion of the claimed travel and entertainment expenses with respect to Mr. and Mrs. Gloe were disallowed by *485 the Court, thus sustaining respondent's determination, such disallowed portion should nevertheless be allowed to petitioner under section 162(a) as additional compensation to Mr. Gloe. Petitioner, of course, had the burden of proof on this newly raised issue, just as he had on the first issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Furthermore where, as here, a claimed deduction is at issue, the burden was upon petitioner not only to show error by respondent in his determination, but also to prove his entitlement to the deduction, including compliance with all applicable provisions of law. Estate of Jayne v. Commissioner,61 T.C. 744 (1974). In the present case, it is clearly established that the amounts in question were paid by petitioner to or for the benefit of Mr. Gloe. In contending that they should be allowed to petitioner as deductions for compensation to Mr. Gloe, however, petitioner took upon itself the burden of proving that petitioner intended to pay such amounts to Mr. Gloe as compensation, and that the amount thereof, taking into consideration the other compensation paid to Mr. Gloe in the years in question, was reasonable. Botany Worsted Mills v. United States,278 U.S. 282 (1929); *486 Electric & Neon Inc. v. Commissioner,56 T.C. 1324 (1971), affd. 496 F.2d 876 (5th Cir. 1974); Paula Construction Co. v. Commissioner,58 T.C. 1055 (1972), affd. 474 F.2d 1345 (5th Cir. 1973); sec. 1.162-7(a), Income Tax Regs.
On both these essential points, there was a complete failure of proof by petitioner. There is not a scrap of evidence in this record that petitioner intended the payments in question to be treated as anything other than reimbursement of expenses incurred on its behalf by Mr. Gloe, and they were so claimed in petitioner's tax returns as "travel and entertainment expenses." In fact, the evidence of record strongly negates any intention of petitioner that such amounts be considered as compensation to Mr. Gloe. When the parting of the ways took place between petitioner and Mr. Gloe, effective October 1, 1979, the termination agreement between them, which is in evidence, clearly provided that if any of the claimed travel and entertainment expenses with respect to Mr. Gloe were disallowed by respondent upon audit, Mr. Gloe would be obligated to refund three-quarters of such amounts to petitioner, and an escrow fund of $40,000 was established, from moneys otherwise *487 payable to Mr. Gloe, to secure his promise in this regard. We think it is clear from this record that, in paying these amounts, petitioner did not consider them as additional compensation to Mr. Gloe. Furthermore, as we have found, petitioner paid compensation to Mr. Gloe in 1978 and 1979 in the respective amounts of $193,238 and $248,071, and apparently claimed deductions for the same which were not challenged by respondent. These amounts certainly appear to be generous compensation to Mr. Gloe, and it was thus necessary for petitioner to prove that the additional amounts in issue herein, when added to the compensation already paid, still resulted in a total compensation to Mr. Gloe in each of these years which was reasonable in amount. No evidence at all was offered on this point. We thus reject petitioner's claim that the amounts in issue herein are allowable deductions to petitioner as additional compensation to Mr. Gloe. In a case whose facts were remarkably like the present case, so far as the corporate taxpayer is concerned, we said in Olson v. Commissioner,T.C. Memo. 1958-56: For completeness, we refer briefly to the contention that, to the extent we might otherwise disallow *488 any part of the claimed travel, entertainment and automobile expenses as deductions by the corporation, we should allow such amounts as deductions for additional salaries or other compensation paid to the * * * corporate officers. This is obviously an afterthought. There is nothing in the record to show that any such additional compensation was intended or expected, and the record fails to support the view that any such amounts, when related to the substantial salaries * * * accrued to or received by each of the [corporate officers] were reasonable. * * * We, therefore, reject the contentions urged in this respect. * * * We have considered the other arguments raised herein by petitioner and find them to be without merit. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.
2. Of this amount, it was stipulated that only $1,747.62 pertained to Mr. and Mrs. Gloe, and that the balance of $1,294.20 pertained to a Mr. and Mrs. Wagner. Petitioner has conceded that all challenged travel and entertainment expenses relating to Mr. and Mrs. Wagner in 1978 and 1979 were properly disallowed. No other such items properly attributable to Mr. or Mrs. Wagner appear to be in issue, so far as this record discloses. 3. The membership was a "family" membership, meaning that charges could be incurred by Mr. Gloe, Mrs. Gloe or their children. During 1978 and 1979, charges in the respective amounts of $572.03 and $803.99 were incurred at times when Mr. Gloe was out of the Easton, PA. area. ↩
4. These amounts have now been conceded by petitioner as not being allowable travel and entertainment expenses. ↩
5. The total expense was $4,360.18. Respondent now concedes that all but $166.25 of the disallowed portion is allowable, and petitioner concedes the latter amount as an unallowable personal expense.↩
6. Petitioner claims that it was engaged in the manufacture of writing instruments and cosmetics, but the only support for this contention in this record are statements made in petitioner's tax returns for 1978 and 1979. Statements made in tax returns are not self-proving. The returns herein were stipulated into evidence simply as true copies of the returns filed by petitioner. The truth of their contents was not stipulated.↩
7. Petitioner has conceded the disallowance of the remaining amount of this item.↩