LAWRENCE H. AND SHIRLEY A. SCHLANG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schlang v. Commissioner
Docket No. 7966-91
United States Tax Court
T.C. Memo 1992-515; 1992 Tax Ct. Memo LEXIS 552; 64 T.C.M. (CCH) 670; September 8, 1992, Filed *552 Decision will be entered under Rule 155. For Petitioners: Kevin J. Mirch. For Respondent: Fred E. Green, Jr.
DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies of $ 10,051 and $ 1,138 in petitioners' Federal income taxes for 1981 and 1984, respectively. After a concession by respondent, [1] the issue for decision is whether petitioners are entitled to a $ 1,138 investment credit for 1984 pursuant to section 38 [2] and a resulting carryback of $ 8,762 [3] for 1981. This turns on the question as to whether certain inflight video equipment purchased by petitioner Lawrence H. Schlang qualified as "used section 38 property". *553 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Lawrence H. and Shirley A. Schlang resided in Reno, Nevada, at the time they filed their petition. At the time of trial, Lawrence H. Schlang (hereinafter referred to as petitioner) was a financial planner with IDS Financial Services. Prior to this employment, he worked as a flight engineer, co-pilot, and captain for several airlines including Continental Airlines. On December 31, 1984, petitioner purchased inflight video equipment (the equipment) from All Type Equipment Leasing, Corp. (ATEL) for $ 150,000. The equipment consisted of three video projectors and screens, two tape players, one control station, and one video monitor. It was used to show movies in flight and for passenger instructions. Petitioner purchased the equipment from ATEL pursuant to an Equipment Purchase Agreement (the Purchase Agreement), dated December 31, 1984. Paragraph 2(a) of the Purchase Agreement states: "Purchaser understands that the Equipment is subject to various leases to third parties (the "Initial Subleases"), and *554 that Purchaser will not be assigned any rights or assume any obligations under the Initial Subleases." Addendum A of the Purchase Agreement and Schedule A of the Bill of Sale between petitioner and ATEL, both dated December 31, 1984, specifically state that "This equipment is currently on sub-lease to Inflight Service, Inc. and being used by Northwest Airlines, Inc." At the time of the purchase, the equipment was subject to a lease between ATEL and Inflight Services, Inc. (Inflight Services), which was signed on December 15, 1983, for a period of 60 months. Pursuant to this lease, Inflight Services was to lease from ATEL inflight video equipment. Also, on December 31, 1984, ATEL and petitioner entered into a lease-back agreement whereby petitioner leased the equipment back to ATEL beginning December 31, 1984, for a term ending July 1, 1991. As a result of a prior lease agreement dated February 9, 1983, between Inflight Services, as lessor, and Northwest Airlines, Inc. (Northwest), as lessee, the inflight video equipment was placed on six DC-10 aircrafts owned and/or operated by Northwest, including a DC-10 aircraft with a tail number 147. The equipment subject to the Purchase *555 Agreement was on board the DC-10 aircraft with the tail number 147. Shortly after petitioner purchased the equipment, ATEL, acting as agent for petitioner, entered into a leasing agreement with Northwest[4] whereby the equipment would remain aboard the same airplane. Petitioners filed joint Federal income tax returns for 1981 and 1984. On Form 3468, Computation of Investment Credit, attached to their 1984 Federal income tax return, petitioners computed the total investment credit based on a $ 125,000 unadjusted basis of the equipment. They listed an investment credit of $ 10,000 of which only $ 1,138 was available for the 1984 tax year. Petitioners filed an amended Federal income tax return (Form 1040X) for 1981 on August 18, 1986, claiming an investment credit carryback from *556 1984 of $ 8,762. [5] They filed a second amended Form 1040X for 1981 on October 23, 1987. In the notice of deficiency respondent disallowed the investment credit for 1984 and the resulting investment credit carryback to 1981 because the leased property did not qualify as used section 38 property.
OPINION The threshold issue is whether petitioners have established that the equipment is qualified property under section 38. If not, then they are not entitled to the investment credit and resulting carryback. Petitioners contend that Northwest was not a user of the equipment before the transaction between petitioner and ATEL. They argue that Northwest only became a user after the Purchase Agreement was entered when a lease was negotiated directly with Northwest. Consequently, petitioners maintain that the property qualified as "used section 38 property" and thus *557 they are entitled to the investment credit for 1984 and the carryback to 1981. Respondent, on the other hand, contends that Northwest was a user both before and after the Purchase Agreement and, accordingly, the investment credit and carryback should be denied. We agree with respondent. Respondent's determination is presumed correct and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 38 generally provides for a credit against tax for investments in certain types of property. Section 46(a) determines the amount of investment credit as the sum of certain percentages of the "qualified investment". Qualified investment, as applied in this case, is a percentage of the cost of "used section 38 property" as defined in section 48(c)(1). See sec. 46(c)(1)(B). Section 48(c)(1) provides as follows: (1) IN GENERAL. -- For purposes of this subpart, the term "used section 38 property" means section 38 property acquired by purchase after December 31, 1961, which is not new section 38 property. Property shall not be treated as "used section 38 property" if, after its acquisition by the taxpayer, it *558 is used by a person who used such property before such acquisition * * *. Petitioners argue that Inflight Services rather than Northwest used the equipment. Petitioner testified that, based on his experience with Continental, the airline did not operate the video equipment but rather Inflight Services' employees boarded the plane and set up the equipment for the movies and passenger instructions. However, petitioner offered no evidence as to whether Northwest or Inflight Services operated in the same manner as Continental. We conclude that Northwest used the equipment both before and after the acquisition by petitioner. Accordingly, we hold that petitioners have not carried their burden of proof on this issue. The initial sublease by ATEL with Inflight Services entered into on December 15, 1983, leased inflight video equipment aboard several DC-10 aircraft, one with tail number 147, which was owned and operated by Northwest. This sublease was to extend for a period of 60 months. Furthermore, Addendum A of the Purchase Agreement and Schedule A of the Bill of Sale between petitioner and ATEL state that at the time the Purchase Agreement was signed, the equipment was on sublease *559 to Inflight Services and was used by Northwest Airlines. Schedule A also discloses that the equipment was installed on the DC-10 aircraft with tail number 147. It is clear that the equipment was being used by Northwest prior to December 31, 1984. Since Northwest used the equipment both before and after the purchase, it does not qualify as used section 38 property. See, e.g., Ocrant v. Commissioner, 65 T.C. 1156 (1976); Bacot v. Commissioner, T.C. Memo. 1989-77. Additionally, section 1.48-3(a)(2)(i), Income Tax Regs., provides: Property shall not qualify as used section 38 property, if, after its acquisition by the taxpayer, it is used by (a) a person who used such property before such acquisition * * *. In addition, if property owned by a lessor is sold subject to the lease, or is sold upon the termination of the lease, the property will not qualify as used section 38 property with respect to the purchaser if, after the purchase, the property is used by a person who used the property as a lessee before the purchase. Pursuant to the Purchase Agreement, petitioners purchased the equipment subject to the initial sublease between ATEL *560 and Inflight Services, as well as the lease between Inflight Services and Northwest. Since the equipment purchased by petitioners was subject to the initial sublease and was used by the same entity, Northwest, it does not qualify as used section 38 property. Petitioners also argue that respondent took inconsistent positions throughout the case, thereby denying them certain legal rights. They contend that respondent first took the position that the end user was ATEL, then Inflight Services, and then Northwest. Petitioners' argument is without merit. If the alleged "new theory" merely clarifies or develops respondent's original determination, there is no "new matter". See Achiro v. Commissioner, 77 T.C. 881, 890 (1981); Estate of Jayne v. Commissioner, 61 T.C. 744, 748-749 (1974). Respondent's statutory notice of deficiency was based upon the determination that the equipment did not qualify as used section 38 property. It is clear from the record that petitioners knew that there was a controversy as to whether the equipment could be considered used section 38 property. They were not disadvantaged or surprised in any manner. See Grow v. Commissioner, 80 T.C. 314, 329 (1983). *561 We have considered petitioners' other arguments and find them to be without merit. In sum, we hold that petitioners have failed to establish that the equipment is qualified property under section 38, and therefore they are not entitled to the investment credit and carryback. Decision will be entered under Rule 155. Footnotes
1. On brief, respondent conceded $ 1,238 of the total deficiency for 1981. ↩
2. Unless indicated otherwise, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Petitioners attempted to claim a $ 8,862 investment credit carryback from 1984. However, they actually claimed a $ 8,762 carryback because of a mathematical error.↩
4. Petitioner tried to distinguish between Northwest Airlines and Northwest Orient during this transaction, but in all the exhibits in evidence and in petitioner's testimony no distinction was made. We shall treat this airline as Northwest.↩
5. Petitioners also increased their tax liability by $ 1,635 on the Form 1040X for 1981 as a result of a decision rendered by this Court on April 7, 1986.↩