(No. 34555.—

ANNA BONCZKOWSKI et al., Appellants, vs. EDMUND KUCHARSKI, Registrar of Titles, et al., Appellees.

*Opinion filed March 20, 1958—Rehearing denied May 23, 1958.*

444

Joseph Z. Willner, Ben R. Nierenberg, and Stanley A. Lesniewski, all of Chicago, for appellants.

Milton M. Hermann, of Chicago, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal from a decree of the circuit court of Cook County raises questions of the validity of a joint will, and of its enforcibility as a contract so as to estop the surviving testator from conveying real estate in a manner not provided for in the will. A freehold is involved giving us jurisdiction of the direct appeal.

On April 15, 1943, title to the real estate in controversy became vested in Anton Zmucki and his wife Mary Zmucki, as joint tenants, and such title was duly registered in the office of the registrar of titles for Cook County. Nine years later, on January 23, 1952, Anton and Mary executed an instrument captioned "Last Combined Will and Testament," the provisions of which were as follows:

"We, Anthony Zmucki and Mary Zmucki, of the City of Chicago, County of Cook and State of Illinois, being of sound and disposing minds and memories, do, therefore, make, publish and declare this to be our Last Combined Will and Testament, hereby revoking and making void all former wills by us heretofore made.

"FIRST Mary Zmucki I order and direct my husband, Anthony Zmucki, to pay all my just debts and funeral expenses as soon after my decease as conveniently may be, if he is financially able.

"In the event that my husband, Anthony Zmucki, should predecease me or be financially unable to pay my just debts and funeral expenses, I order and direct my married daughter, Anna (Madon) Baczkowski, to pay my just debts and funeral expenses as soon after my decease as conveniently may be.

"SECOND Anthony Zmucki I order and direct my married daughter, Sophie (Zmucki) Plys, to pay all my just debts and funeral expenses as soon after my decease as conveniently may be with funds made available from insurance. Should any funds be left after payment of my just debts and funeral expenses, I give the remainder to my married daughter, Sophie (Zmucki) Plys.

"Should my married daughter, Sophie (Zmucki) Plys, predecease me, I order my two sons, Stanley Zmucki and Bruno Zmucki, to pay all my just debts and funeral expenses as soon as conveniently may be with funds made available from insurance. Should any funds be left after payment of my just debts and funeral expenses, I give the remainder, share and share alike, to my two sons, Stanley Zmucki and Bruno Zmucki.

"THIRD Anthony Zmucki and Mary Zmucki. After we both decease, we give, devise and bequeath the rest, residue and re-

mainder of our property real, personal and mixed of whatsoever kind and nature, and wheresoever situated to our children or survivors of them. The property real and personal is to be divided in the following manner:

"(A) to Anna (Madon) Baczkowski, or her survivors, undisputed one-half ($\frac{1}{2}$) ownership of personal property and undisputed one-half ($\frac{1}{2}$) ownership of real property described fully below.

"(B) To Sophie (Zmucki) Plys, Stanley Zmucki and Bruno Zmucki, or the survivors of them, undisputed one-half ($\frac{1}{2}$) ownership of personal property and undisputed one-half ($\frac{1}{2}$) ownership of real property. The one-half ($\frac{1}{2}$) ownership of the personal and real property is to be divided into three (3) equal shares for each of the following children, or the survivors of them:

Sophie (Zmucki) Plys
Stanley Zmucki
Bruno Zmucki

"Legal Description of Real Property (Lot 5 & 6)  *  *  *."

The real estate described in the instrument is the property involved in this proceeding and it appears that all the named devisees survived both testators. Anna (Madon) Baczkowski, also known as Anna Bonczkowski, was the adult daughter of Mary Zmucki by a previous marriage, while Sophie, Stanley and Bruno, also adults, were the children of Anton Zmucki and a deceased wife.

Anton Zmucki died on March 20, 1954, and the combined will was read several days later at a family meeting attended by Mary Zmucki and all the devisees. As shall later be detailed, the will was not immediately presented for probate. A month after Anton's death an affidavit of Mary Zmucki was filed with the registrar which averred that Anton had died intestate. Filed at the same time was a warranty deed, which recited "No revenue stamps required," whereby Mary conveyed the premises described in the will to her daughter Anna Bonczkowski and the latter's husband, Adam Bonczkowski, as joint tenants. Four months later, on August 26, 1954, Mary Zmucki also died.

On December 17, 1954, Sophie, Bruno and Stanley, the children of Anton Zmucki, filed separate affidavits with the registrar, (see: Ill. Rev. Stat. 1953, chap. 30, par. 129,)

wherein each claimed an undivided one-sixth interest in the premises as a devisee under the "Last Combined Will and Testament." Thereafter, on May 23, 1955, Anna and Adam Bonczkowski, hereinafter referred to as appellants, filed a petition in the circuit court of Cook County, as provided in the Conveyances Act, (Ill. Rev. Stat. 1953, chap. 30, par. 131,) praying that the affidavits of Sophie, Bruno and Stanley, the principal appellees in this court, be removed as clouds upon appellants' title. The registrar was joined as a respondent and the petition attacked his action of making a memorial of the affidavits. The chronology of events that ensued is as follows: June 2, 1955—the petition was referred by the court to the examiner of titles for the registrar's office; June 15, 1955—the "combined" will was admitted to probate as the will of Anton Zmucki and no appeal taken; June 30, 1955—appellees filed their answer to appellants' petition each claiming an undivided one-sixth interest in the premises as a devisee under the "combined" will; May 25, 1956—the joint instrument was admitted to probate as the will of Mary Zmucki and no appeal taken; May 28, 1956—the examiner heard the evidence in the cause; July, 1956—the examiner filed a report finding that appellees' affidavits were clouds upon appellants' title and recommended a decree finding clear title to be vested in appellants. The chancellor, however, sustained appellees' exceptions to the report and dismissed appellants' petition after finding (1) that the affidavit of Mary Zmucki relative to Anton's intestacy was false and fraudulent; (2) that the combined will had been admitted to probate as the will of each of the testators; (3) that the said will is a joint will constituting a contract between the testators; (4) that Mary's deed to appellants was in violation of her contractual obligations and thus of no force and effect; (5) that appellants had actual notice of the will and its provisions; (6) that appellants were not *bona fide* purchasers for value and paid no con-

sideration for the deed from Mary Zmucki; and (7) that the registrar properly accepted and registered the affidavits of the appellees. This appeal has resulted and appellants' principal contentions are that the instrument in question is neither valid as a joint will nor enforceable as a contract.

That we are concerned here with a joint will is manifestly clear from its form and terms, for such a will is consistently defined as a single testamentary instrument which contains the wills of two or more persons, is executed jointly, and disposes of property owned jointly, in common or in severalty by them. (See: 57 Am. Jur., Wills, sec. 1364d; 169 A.L.R. 12; *Frazier* v. *Patterson,* 243 Ill. 80; *Curry* v. *Cotton,* 356 Ill. 538.) Such a will may be reciprocal or mutual, but it is not essential that it be so. (*Platz* v. *Walk,* 3 Ill.2d 313; *In re Estate of Edwards,* 3 Ill.2d 116.) Although it was the early view that a joint will bequeathing the properties of the testators could not be probated as the will of either testator, since it did not purport to be the separate will of either but was wholly a joint act, the modern concept, embraced by this court in the *Frazier* and *Curry* cases cited above, holds there is no legal objection to uniting the wills of two or more persons in one instrument, provided the dispositions of the property of each maker are severable from those of the others, and provided the instrument can be given effect on the death of each testator, as the will of that one. (See: Page on Wills, Lifetime ed. sec. 104; 57 Am. Jur., Wills, sec. 683; 97 C.J.S., Wills, sec. 1365.) When such conditions exist, a joint will contained in a single instrument is held to be the will of each maker and subject to probate at the death of each.

Based upon the concept that a joint will, to be valid, must be of such character that it may be probated on the death of each maker as his or her will, the policy of the law has generally been against the validity of a joint will executed on the condition expressed in it that it is not

effective as a will, or is not to be probated, until the death of the testator last surviving, and the majority view is that such a will cannot be probated as the will of either testator. (*Epperson* v. *White,* 156 Tenn. 155, 299 S.W. 812, 57 A.L.R. 601; *Hershey* v. *Clark,* 35 Ark. 17; *Walker* v. *Walker,* 14 Ohio St. 157; 57 Am. Jur., Wills, sec. 683; 97 C.J.S., Wills, sec. 1365.) Within our own jurisdiction it is said in *Gerbrich* v. *Freitag,* 213 Ill. 552, at 555: "Unless the provisions of the instrument are such that the disposition of the property is suspended after the death of one [testator] until the death of the other, so that it cannot be executed [*sic*] as the separate will of the deceased party, it is no objection that there is but a single instrument." Similarly, in Page on Wills, Lifetime ed., sec. 107, the author comments that if a joint will, by which the testators devise their joint interests to third persons, is not of the type that it can be probated on the death of each testator, then the great weight of authority is that the instrument should be refused probate altogether. Such a rule, it is said, is founded on the public policy which requires the prompt and orderly settlement of a decedent's estate.

Applying the majority views to the instrument jointly executed by Anton and Mary Zmucki, it is manifest that it can be given no validity as a joint will. The instrument not only purports to postpone the disposition of the estate of each maker until "after we both decease," but is also not of the character that it may be probated at the death of each maker as his or her will. The first article of the instrument clearly makes no disposition of any separate estate of Mary and, in the absence of proof that the insurance referred to in the second article was payable to Anton's estate, the terms of the latter article afford no basis for finding that Anton thereby disposed of any separate estate of his own. The third article, therefore, was the only dispositive article. By its terms Anton and Mary did not pur-

port to create or give any separate estate to each at the death of the other, but treated all their property as a joint fund and devised it to third persons. Apart from the direction of the testators which suspended the disposition of all their property until after the death of the survivor, there is yet another reason which renders the will invalid insofar as it sought to devise the real estate owned in joint tenancy, and demonstrates the impossibility of giving effect to the third article at the death of each maker. An essential feature of the estate of joint tenancy is the right of survivorship, that is, the right of the last survivor to take the whole of the estate. (*Welsh* v. *James,* 408 Ill. 18; *Kane* v. *Johnson,* 397 Ill. 112.) Cognizant of such feature, this court has held that a devise by a joint tenant, who is survived by other joint tenants, is not effective to pass any title to the real estate held in joint tenancy for the reason that the title immediately passes by operation of law to the survivor or survivors. (*Eckardt* v. *Osborne,* 338 Ill. 611; *Klajbor* v. *Klajbor,* 406 Ill. 513.) In the present case, therefore, the joint instrument was ineffective at the death of Anton to devise any interest in the jointly-owned property. By operation of law the whole of the estate passed to the surviving joint tenant. Because the joint instrument provides that it is not to be effective until after the death of both testators, and because neither the instrument nor the real property involved was of the character that would permit a separation of estates and probate at the death of each maker, it is our conclusion that the instrument was not the valid will of either maker. Accordingly, appellees may not sustain their claim to the real estate in question as devisees under such will, and so much of the decree appealed from as tends to recognize the validity of the instrument as a will is in error.

Although an instrument is invalid as a joint will, it may have effect as a contract enforcible in equity or, as it is put in 57 Am. Jur., Wills, sec. 695, the instrument

may be sufficient "to establish a contract for the testamentary disposition it purports to make." (See also: 97 C.J.S., Wills, secs. 1367(c), (d), and (f); 169 A.L.R. 30.) When it is established that the instrument is contractual, equity holds that the survivor is estopped to dispose of his property otherwise than as contemplated in the agreement, and such contract may be enforced by third-party beneficiaries. (See: *In re Estate of Edwards,* 3 Ill.2d 116; *Curry* v. *Cotton,* 356 Ill. 538; *Frazier* v. *Patterson,* 243 Ill. 80; 57 Am. Jur., Wills, sec. 721; 97 C.J.S., Wills, sec. 1367(e)(2).) In apparent recognition of these principles the decree appealed from found that the instrument executed by Anton and Mary Zmucki was a contract between them, that the deed from Mary to Anna and Adam Bonczkowski was in violation of her contractual obligation, and that such deed was of no force or effect. Appellants, however, attack the sufficiency of the proof upon which the finding of a contract was based, and also urge that the instrument is not enforcible as a contract because there was a lack of consideration and because neither maker received any benefits from the other under its provisions. With regard to the latter contention we held in the case of *In re Estate of Edwards,* 3 Ill.2d 116, 123, that where a joint will is executed pursuant to a contract, it is not necessary that the survivor receive material gain upon the death of the other testator, since he has already derived the benefit from the consideration given by the deceased to bind the agreement, thus making the contract executed as to the deceased testator and thereafter irrevocable by the other. As for the claim that the contract lacked consideration, we have held that where the agreement is that each party will dispose of his property in a certain way, the mutual promises are sufficient consideration to support the agreement. (*Curry* v. *Cotton,* 356 Ill. 538, 547; *Peck* v. *Drennan,* 411 Ill. 31.) In view of the fact that the real estate described in the third article of the instrument here

was owned in joint tenancy, it is apparent that it was the mutual intent of the makers to bind the survivor to a disposition which would divide the property between their respective children by former marriages.

All authorities are in accord that the party asserting an instrument is contractual as well as testamentary has the burden of establishing the contract by clear, convincing and satisfactory evidence, and it is appellants' further contention that proof of such quality has not been made in this case. Proof *aliunde* a joint will is not required and the evidence admissible to prove the agreement may take various forms, such as the instrument itself, or the competent testimony of competent witnesses as to the declaration of the testators or as to relevant facts and circumstances. (See: *Curry* v. *Cotton,* 356 Ill. 538; *Jacoby* v. *Jacoby,* 342 Ill. App. 277; 97 C.J.S., Wills, sec. 1367(c).) While there was at one time a tendency to favor a presumption that a joint will, particularly between a husband and wife, was executed pursuant to a contract or agreement between the testators, this court has recently expressed its reluctance to permit the fact of joint execution alone to be conclusive, and has looked to the provisions of the will itself and to other proof. (*In re Estate of Edwards,* 3 Ill.2d 116.) We are of the opinion that such other proof satisfactorily appears in this record.

Looking first to the circumstances surrounding Anton and Mary Zmucki at the time the joint instrument was executed, it is found that each had a child or children by former marriages. In *Schauer* v. *Schauer,* 43 N.M. 209, 89 P.2d 521, the fact that a wife made a will in which her deceased husband's son by a prior marriage was a beneficiary was held evidence, although not conclusive, of an oral contract between the husband and wife for mutual wills. The facts of the present case are even stronger, for not only are the wills of husband and wife contained in

one instrument, but also both parties to the instrument had children by prior marriages, and the plainly expressed intent of both was that each would make the children of the other a beneficiary. That the expressed intention was the product of an agreement is further manifested by the fact that the real property specifically referred to in the joint instrument was owned by Anton and Mary as joint tenants. Both are presumed to have known that title would pass to the survivor who could then dispose of it as he or she saw fit. Yet the parties divested themselves of such right and sought to bind and assure themselves that the survivor would cause their respective children to be the ultimate recipients of the property in equal shares, one half to Mary's child and one half to Anton's children.

Support for the theory that the instrument was contractual is also found in the testimony of Anton's children, Stanley and Bruno. According to them, Mary Zmucki made the following statements on the occasion when the combined will was read to the family immediately after Anton's death: "Didn't we make nice arrangements?" and "Wasn't that the right thing we did?" While not conclusive, such statements bespeak a plan and mutual agreement. Although appellants urge that statements attributed to deceased persons are the weakest kind of evidence, it is to be observed that the testimony of Stanley and Bruno stands uncontradicted by appellants, who were themselves present at the family meeting. Contention is also made, for the first time in this court, that the children of Anton were not competent witnesses. It is well established that objections to the admissibility of evidence or to the competence of witnesses cannot be made for the first time in a court of review. (*Wingard* v. *Harrison,* 337 Ill. 387; *Molloy* v. *Chicago Rapid Transit Co.,* 335 Ill. 164; 2 I.L.P., Appeal and Error, sec. 257.) Moreover, the admission of testimony without objection waives the incom-

petency of a witness. *Chicago Title and Trust Co.* v. *Sagola Lumber Co.* 242 Ill. 468; *Doty* v. *Doty,* 159 Ill. 46.

Turning to the instrument itself, the language of the third article is an indication of a predesigned agreement and arrangement, for, by it, the makers treated the property of each, whether jointly or severally owned, as a joint fund which should be shared by the children of each. Such a pooling of interests and then jointly providing for the disposal of the whole fund gives every indication of a mutual compact. Moreover, as was done in the *Edwards case,* significance may be attached to the action of the parties in labeling the instrument as a combined will and to the plural designations in the provision which stated *"we give, devise and bequeath * * * our* property * * *."* (Emphasis supplied.) When these features are added to the other evidence relating to the circumstances of the parties and their property, it is our opinion that the chancellor was correct in his finding that the joint instrument was contractual, and in holding that the deed from Mary Zmucki to appellants was in violation of the contract agreement. Appellants rely heavily upon *Jacoby* v. *Jacoby,* 342 Ill. App. 277, as commanding a different result. In that case, however, it appears there was substantive and uncontroverted evidence rebutting any presumption of a mutual compact. Similar evidence was not offered or introduced in the case at bar.

Appellants have insisted throughout the proceeding, and reassert at this time, that the affidavits of the appellees were filed with the registrar contrary to law. They urge that appellees should have filed a petition in the circuit court in accordance with section 71 of the act relating to the registration of land titles, (Ill. Rev. Stat. 1953, chap. 30, par. 115,) rather than to file affidavits with the registrar under section 92 of the act. (Ill. Rev. Stat. 1953, chap. 30, par. 129.) We agree with the chancellor that

there is no merit to this position. Section 71, which is titled "Personal representative of deceased owner to file copy of letters, etc.," contemplates action to be taken by the heirs or devisees of a deceased owner in order to fix their interests in accordance with the laws of descent or the terms of the registered owner's duly probated will. Section 92, on the other hand, relates to making claims adverse to the title of a registered owner and, in *Singer* v. *Murphy*, 338 Ill. 620, at 630, is described as the *only* method provided in the act for the filing of claims adverse to the rights of the registered owner. When appellees filed their affidavits the registered owners were Adam and Anna Bonczkowski, and, at that time, the will of Anton and Mary Zmucki, the previous registered owners, had neither been offered nor admitted to probate. With the probate of the will undetermined, it was only by the filing of affidavits under section 92 that appellees could protect their adverse claims against an intervening sale by the Bonczkowskis to a *bona fide* purchase for value.

For the reasons stated, the decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*