ESTATE OF CHARLES E. GRIMES, DECEASED, ELIZABETH J. BARTLETT, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Grimes v. Commissioner
Docket No. 33429-84.
United States Tax Court
T.C. Memo 1988-576; 1988 Tax Ct. Memo LEXIS 605; 56 T.C.M. (CCH) 890; T.C.M. (RIA) 88576; December 20, 1988. Merrick C. Hayes, for the petitioner. Michael W. Bitner, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency of $ 346,157.94 in the Federal estate tax of the Estate of Charles E. Grimes, who died in 1980. After concessions, the issues for decision are: (1) Whether the estate made a valid election for special use valuation under *609 section 2032A[1] where "the recapture agreement" was prepared and executed prior to the filing of the estate tax return but due to inadvertence was not mailed along with the timely filed estate tax return that otherwise contained proper notice of election of special use valuation; and (2) Whether the decedent's spouse received a qualifying nonterminable interest pursuant to the decedent's will under Illinois law so that the estate is entitled to a marital deduction with respect to certain personal property received by the spouse. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, stipulation to be bound and attached exhibits are incorporated herein by this reference. The decedent, Charles E. Grimes, died testate on December 25, 1980, while a domiciliary of the State of Illinois. The estate of the decedent is being *610 administered in the State of Illinois. Elizabeth J. Bartlett (formerly Elizabeth J. Grimes), the widow of the decedent and the Executrix of the Estate of Charles E. Grimes, deceased, resided in Farmer City, Illinois at the time of the decedent's death and in Mesa, Arizona at the time the petition in this case was filed. For convenience she will be referred to herein as Mrs. Grimes. In September 1980, the decedent's ill health prompted the decedent and his wife (referred to collectively as "the Grimeses") to have their attorney, Robert Gammage ("Mr. Gammage"), come to the Grimeses' farm to discuss their will. The decedent informed Mr. Gammage that he did not want a contractual will of the type that his parents had executed, because he was aware of the controversy [2] surrounding his parents' joint and mutual contractual will, and because he felt that a "contractual will was very limiting." [3] Mr. Gammage returned to his office and prepared and personally typed a document with the caption "Mutual Last Will and Testament" (the "will") for the Grimeses and subsequently returned to the farm and left it with them to peruse. The will provided: MUTUAL Last Will and Testament of
*611 CHARLES E. GRIMES AND ELIZABETH J. GRIMES WE, CHARLES E. GRIMES and ELIZABETH J. GRIMES, husband and wife, of Santa Anna Township, DeWitt County, Illinois, each being of sound mind and memory, do hereby make, publish and declare this to be the Mutual Last Will and Testament of each and both of us, and hereby expressly revoke any and all wills and codicils heretofore made by us, or either of us. FIRST: It is our intent that all the just debts, funeral and burial expenses, expenses of the administration of our estates, and taxes, if any, by reason of our deaths, be paid with all convenient speed after our respective deaths and from our respective estates. SECOND: We, and each of us, give and bequeath to the survivor of us all the personal property owned by the first of us to die, absolutely. Each of us gives and devises to the survivor of us a life estate in the real estate owned by the first of us to die, with remainder in fee to our four children, Beverly Jane, [sic] Drummond, Carl E. Grimes, David C. Grimes and Alan R. Grimes, share and share alike. In the event we should die as a result of a common catastrophe, or in any event at the death of the survivor of us, then *612 all property both personal and real of ours or the survivor of us as the case may be to our said four children, share and share alike, and in the event that any of our said four children shall fail to survive us, or the survivor of us, as the case may be, then his, her, or their respective heirs of the body shall take the share, he, she or they would have taken hereunder had he, she, or they survived us, or the survivor of us. *613 * * * While reviewing the will, Mrs. Grimes asked the decedent why there were not two separate wills. The decedent answered that he believed that because of the way the will was written, the will provided the same result as if they had executed separate wills. The spouses executed the will on September 27, 1980, with Mr. Gammage and Mr. Gammage's wife witnessing their signatures and the Gammage firm's C.P.A. notarizing the witnesses' affidavit. About this time the spouses had changed the title to some of their real property from a joint tenancy to a tenancy in common. The will disposes of property owned by the testators individually, as tenants in common, and as joint tenants. The decedent died on December 25, 1980. The Grimeses had then been married 42 years. The Grimeses' parents had been farmers, the Grimeses themselves had been farmers, and their son, David C. Grimes, now farms the land that the Grimeses had farmed during the decedent's lifetime. Pursuant to the Grimeses' will, Mrs. Grimes, as well as the Grimes children (Beverly Jane Drummond, Carl E. Grimes, David C. Grimes, and Alan R. Grimes), acquired interests in the decedent's interest in the real property of *614 the estate. That included the 398.13 acres of farmland located in DeWitt and Piatt Counties, Illinois ("farmland") that is involved in this case. Following the death of the decedent, Mrs. Grimes engaged Mr. Gammage to aid her in her capacity as executrix of the estate. Thereafter, Mr. Gammage worked with her in connection with the preparation of the estate tax return. During this time, Mrs. Grimes decided to elect the provisions of section 2032A in order to "reduce the value of [the] real estate" for Federal estate tax purposes. As required by this election, Mrs. Grimes and Mr. Gammage secured the signatures of the beneficiaries of the will, as the "qualified heirs," on an "Agreement to Special Valuation Under Section 2032A" ("the recapture agreement"). The qualified heirs, Elizabeth J. Grimes, Carl E. Grimes, Beverly Jane Drummond, David C. Grimes, and Alan R. Grimes, signed the agreement on September 23, 1981, two days before the date the estate tax return was due on September 25, 1981. The recapture agreement stated that all of the qualified heirs approved of the election to value the farmland pursuant to section 2032A on the basis of the qualified use (farming) to which *615 the property was devoted. The heirs also consented to personal liability under section 2032A(c) for the additional tax imposed by that subsection with respect to their interests in the farmland in the event of certain early dispositions of the property or early cessation of the qualified use of the property. The recapture agreement further stated: It is understood by all interested parties that this agreement is a condition precedent to the election of special use valuation under section 2032A of the Code and must be executed by every interested party even though that person may not have received the estate tax benefits or be in possession of such property. After securing all the necessary signatures on September 23, 1981, two days before the estate tax return was due on September 25, 1981, Mr. Gammage retained physical possession of the recapture agreement while he was preparing the estate tax return. He signed the estate tax return (Form 706) as the return preparer on September 23, 1981. On September 24, 1981, Elizabeth J. Grimes, as executrix, timely filed the Federal estate tax return (Form 706) for the estate of the decedent with the Internal Revenue Service ("IRS") Service *616 Center at Kansas City, Missouri. [4]
On the estate tax return, an election was made to value the farmland pursuant to section 2032A. This was done by placing an "X" in the box marked "yes" in response to question 11 of page two of the estate tax return in answer to the question "Do you elect the special valuation * * *." Appraisals, dated September 22, 1981, containing fair market valuations and section 2032A special use valuations of decedent's interests in certain real property were attached to the return. Along with these detailed appraisals were maps, a death certificate, copy of the will, letters of appointment of Mrs. Grimes as executrix, and a document entitled "STATEMENT * * * IN SUPPORT OF SPECIAL USE VALUATION FOR CERTAIN FARM PROPERTY AS AUTHORIZED UNDER INTERNAL REVENUE CODE SECTION 2032A." That Statement *617 in Support, signed by Mrs. Grimes as executrix of her husband's estate, included the names, social security numbers, relationships, and addresses of the parties receiving any interest in the specially valued property. These individuals included Elizabeth J. Grimes, Carl E. Grimes, Beverly Jane Drummond, David C. Grimes and Alan R. Grimes. That Statement in Support of special use valuation was signed by Mrs. Grimes on September 24, 1981 and was included in the packet of materials filed with the Form 706. That Form 706 (Rev. Jan. 1979) contained as part of question 11 on page 2 the following language: Also attach to this return an agreement to express consent to personal liability under section 2032A(c) in the event of certain early dispositions of the property or early cessation of the qualified use. The agreement must be executed by all parties receiving any interest in the property being valued based on its qualified use. The agreement is to be in a form that is binding on all parties under applicable local law. It must designate an agent for the parties for all dealings with the Internal Revenue Service on matters arising under section 2032A. However, at the time *618 the estate tax return was filed on behalf of the decedent's estate on September 24, 1981, the recapture agreement that was in the possession of the return preparer was not included in the packet and did not accompany the return when mailed. On October 7, 1981, nine days after the return was received by IRS, the IRS Service Center at Kansas City, Missouri received a letter dated October 5, 1981, from Mr. Gammage, the return preparer. That letter forwarded the recapture agreement that was signed by all of the persons who had acquired rights in the farmland, referred to as "qualified heirs." Mr. Gammage's cover letter stated, in part, that the recapture agreement was "inadvertently omitted from our transmittal of the original return in this estate." [5]
*619 On June 3, 1982, an estate tax closing letter was issued by the IRS and was duly received by Mrs. Grimes in her capacity as executrix of the estate. One month later, liens were filed pursuant to section 6324B against the farmland for additional Federal estate tax imposed by section 2032A(c) due to the special valuation elected under section 2032A. However, in a letter to Mrs. Grimes, as executrix of the estate, from the IRS, dated June 21, 1983, the estate was notified that the estate was to be reopened in accordance with Revenue Procedure 74-5. [6]
Thereafter, on June 22, 1984, the respondent timely mailed a notice of deficiency to the petitioner determining a deficiency in Federal estate tax in the amount of $ 346,157.94. Respondent determined that the decedent's interests in the farmland *620 could not be valued pursuant to section 2032A because of the failure of the estate to timely submit the recapture agreement. Accordingly, respondent determined that the decedent's interests in such farmland must be included in the decedent's estate at the farmland's fair market value as of the date of the decedent's death. On the above mentioned Federal estate tax return, the decedent's estate claimed a marital deduction in the amount of $ 143,866.87. This amount included the following: Stocks and bonds listed on Schedule B
$ 14,588.50   Mortgage, notes and cash listed on Schedule C
79,481.97 Insurance on decedent's life listed on Schedule D
6,458.05 Jointly owned property listed on Schedule E
102,643.05 Other misc. property listed on Schedule F
19,408.76 Less: Expenses
(28,863.44)  Federal and other taxes payable      out of above property interests      (49,850.02)  Total  143,866.877  Respondent recomputed the marital deduction. Respondent agreed that the Schedule D and Schedule E properties were eligible for inclusion in the marital deduction computation, but determined that property included by the petitioner *621 in Schedules B, C, and F, as well as various expenses, were inappropriate for inclusion in the marital deduction computation. Respondent also determined and petitioner agrees that the interests in the decedent's property that the decedent's spouse received by operation of law upon the decedent's death and not pursuant to the will do qualify for the marital deduction. These interests in property that Mrs. Grimes received by operation of law include the transfer of an interest in property within three years of death valued at $ 52,128.36 that is includable in the decedent's gross estate pursuant to section 2035(a). Accordingly, after all these adjustments, respondent increased the marital deduction by an amount of $ 17,362.59 to $ 161,229.46, as follows: All of Schedule D
$ 6,458.05  All of Schedule E
102,643.05
Adjustment d) of the
notice of deficiency 52,128.36
Total
$ 161,229.46
The basis for respondent's disallowance of the Schedules B, C, and F items from the marital deduction was that the decedent's interests in the property that were received by Mrs. Grimes pursuant to the will were nonqualified terminable interests and thus were not eligible for *622 the marital deduction. OPINION Special Use Valuation
Under section 2032A, an estate may elect to value certain qualifying property for Federal estate tax purposes based upon its actual ("special") family farm or small business use rather than upon its highest and best use, as would ordinarily be the case under general valuation principles. The estate must meet the specific and detailed requirements of section 2032A in order to receive this statutory relief. Estate of Clinard v. Commissioner,86 T.C. 1180, 1184 (1986); see also Estate of Cowser v. Commissioner,736 F.2d 1168 (7th Cir. 1986), affg. 80 T.C. 783 (1983); Estate of Abell v. Commissioner,83 T.C. 696 (1984). There are also detailed requirements for making a valid election to use special use values, and the estate must strictly comply with these requirements. Estate of McDonald v. Commissioner,853 F.2d 1494 (8th Cir. 1988), affg. on this issue 89 T.C. 293 (1987); Estate of Johnson v. Commissioner,89 T.C. 127 (1987); *623 Estate of Gunland v. Commissioner,88 T.C. 1453 (1987); Estate of Gardner v. Commissioner,82 T.C. 989 (1984). [7]
Among the many requirements, the executor or executrix must elect the application of section 2032A and must file the agreement referred to in section 2032A(d)(2) (the recapture agreement). Sec. 2032A(a)(1) (B). The only issue in this case is whether or not the estate made a valid election. As it read at the times pertinent to this case, section 2032A(d)(1) provided that the election of special use valuation shall be made "not later than the time prescribed by section 6075(a) * * * and shall be made in such manner as the Secretary shall by regulations prescribe." [8] The applicable regulation, section 20.2032A-8(a)(3), Estate Tax Regs., provides in pertinent part: (3) Time and manner *624 of making effective election. An election under this section is made by attaching to a timely filed estate tax return the agreement described in paragraph (c)(1) of this section [the recapture agreement] and a notice of election [containing items (i) through (xiv)] * * * Here the estate tax return was timely filed and contained a notice of election that met the detailed requirements set out in the regulations. However, the recapture agreement was not attached to the return. Unlike the usual cases involving the validity of the section 2032A election, here there was neither an untimely filed estate tax return nor an amended return attempting to claim or perfect an election. Indeed, this case presents a very appealing *625 fact situation. The recapture agreement was signed by the decedent's spouse and his children, Beverly Jane Drummond, Carl E. Grimes, David C. Grimes, and Alan R. Grimes. They were the qualified heirs, whose signatures were necessary for the proper execution of the recapture agreement. They actually signed the recapture agreement on September 23, 1981, prior to the filing of the estate tax return. The estate tax return, with the election made by Mrs. Grimes as the executrix of the estate, was thereafter timely filed with the IRS on September 24, 1981. Due to inadvertence on the part of the return preparer, the recapture agreement did not accompany the timely filed return. On October 7, 1981, the IRS received a letter dated October 5, 1981 from Mr. Gammage, forwarding the recapture agreement that had been omitted from the transmittal of the original estate tax return. Therefore, the issue is whether, under these particular facts and circumstances, the tardy filing of the recapture agreement that was properly executed prior to the date the estate tax return was due precludes the estate from making a valid election of special use valuation. More precisely, the issue is whether timely *626 filing of the recapture agreement is an essential part of a valid election. Section 20.2032A-8(a)(3), Estate Tax Regs., so provides, and we have upheld the validity of that regulation. Estate of Gunland v. Commissioner, supra.
In Estate of Gunland, the estate tax return was timely filed on May 10, 1982 and no recapture agreement was attached to that return. [9] On September 23, 1982, respondent received an amended estate tax return revising both fair market valuations and section 2032A valuations. Attached to that amended return was a recapture agreement dated April 14, 1982. The parties agreed that the agreement met all of the requirements of section 2032A(d)(2), except for timeliness. We held that the section 2032A election was not valid because a recapture agreement had not been timely filed. In so holding, we rejected the taxpayer's attack on the validity of the pertinent estate tax regulation, as follows: Petitioner argues that section 20.2032A-8(a)(3), Estate Tax Regs., must be set aside as unreasonable and overly restrictive. Petitioner notes that the provisions of section 2032A appear to draw a distinction between the act of election and the filing *627 of an agreement. Section 2032A(a)(1)(B) provides that special use valuation is available when "the executor elects the application of this section and files the agreement referred to in subsection (d)(2)." (Emphasis supplied.) Section 2032A(d)(1) provides that the election "shall be made in such manner as the Secretary shall by regulations prescribe," but does not explicitly refer to regulations governing the filing of the agreement. Section 2032A(d)(2) also does not specify when the agreement must be filed. Petitioner thus maintains that the regulation's specification of when the agreement must be filed is without authorization in the statute. *628 We disagree. Section 2032A(a)(1)(B) provides that special use valuation is available when the executor makes an election and files the required agreement. The election alone is not sufficient to obtain the benefits of section 2032A. Section 2032A(d)(1), which specifies when the election must be made, of course refers only to valid and effective elections. Without the agreement, an election is neither valid nor effective. Section 2032A(d)(1) consequently authorizes the Secretary to prescribe regulations governing the filing of the agreement as one of the components of a valid election. Section 20.2032A-8(a)(3), Estate Tax Regs., is thus a "legislative" regulation expressly authorized by the statute. "Legislative" regulations are entitled to greater weight and deference than are accorded to interpretive regulations. [Citations omitted.] Such legislative regulations must be sustained unless unreasonable and plainly inconsistent with the statute they are designed to implement. [Citations omitted.] In this case, the result would be the same if section 20.2032A-8(a)(3) were an "interpretive "regulation. We conclude that *629 section 20.2032A-8(a)(3) is neither unreasonable nor inconsistent with the statute it is designed to implement. Recapture of tax benefits pursuant to section 2032A(c) is a limitation designed to ensure continued use of specially valued property as a family farm or business. In the absence of the recapture agreement, it is not clear that qualified heirs without possessory interests in the specially valued property are on notice of the recapture tax provisions and thus subject to recapture tax under section 2032A(c). Section 2032A(a)(1)(B) and section 20.2032A-8(a)(3), Estate Tax Regs., consequently provide that the filing of the recapture agreement is a necessary prerequisite to special use valuation. Respondent's regulation recognizes that the timely filing of the agreement is, in effect, one component of a valid election under section 2032A. The House Committee on Ways and Means stated: Under your committee's bill the election to use this special use valuation may be made not later than the time for filing the estate tax return, including extensions. One of the requirements for making a valid election is the filing with the estate tax return of a written agreement signed *630 by each person in being who has an interest (whether or not in possession) in any qualified real property with respect to which the use valuation is elected. This agreement must evidence the consent of each of these parties to the application of the recapture tax provisions to the property. As noted above, such a consent also amounts to a consent to be personally liable for any recapture tax imposed with respect to the qualified heir's interest in the qualified property. Your committee feels that each person receiving an interest subject to potential recapture should agree to this potential liability, especially since that person may not have received the tax benefits from the special use valuation (because the estate tax is to be paid by a residuary legatee who did not receive farm property, for example). [H. Rept. 94-1380, 1976-3 C.B. (Vol. 3) 735, 761. Emphasis supplied.] Section 20.2032A-8(a)(3), Estate Tax Regs., is not invalid. Estate of Gunland v. Commissioner, supra,88 T.C. at 1456-1458. Here petitioner does not challenge the validity of this regulation, which clearly supports respondent's position in this case. Petitioner *631 instead relies upon the substantial compliance doctrine, which this Court also rejected in virtually the same factual situation in Estate of Gunland v. Commissioner, supra,88 T.C. at 1458-1459. There we stated: Petitioner next argues that it is nevertheless entitled to the benefits of special use valuation because it substantially complied with the regulation's requirements. Petitioner maintains that respondent's District Director consequently abused his discretion in rejecting the agreement filed with the amended return. Petitioner relies on a line of cases interpreting regulations issued pursuant to section 302(c)(2)(A)(iii). These cases hold that a regulation which prescribes the time and manner for filing an agreement relating to stock redemptions does not deprive respondent's District Director of the discretionary authority to accept a late-filed agreement. United States v. Van Keppel,321 F.2d 717 (10th Cir. 1963); Cary v. Commissioner,41 T.C. 214 (1963). In each of these cases, the taxpayer's election was allowed because the taxpayer had "substantially complied" with respondent's regulations. Petitioner's reliance *632 is misplaced. In Taylor v. Commissioner,67 T.C. 1071, 1077-1078 (1977), we observed that: The test for determining the applicability of the substantial compliance doctrine has been the subject of a myriad of cases. The critical question to be answered is whether the requirements relate "to the substance or essence of the statute." Fred J. Sperapani,42 T.C. 308, 331 (1964). If so, strict adherence to all statutory and regulatory requirements is a precondition to an effective election. Lee R. Dunavant,63 T.C. 316 (1974). On the other hand, if the requirements are procedural or directory in that they are not of the essence of the thing to be done but are given with a view to the orderly conduct of business, they may be fulfilled by substantial, if not strict, compliance. See Lee R. Dunavent, supra;Georgie S. Cary,41 T.C. 214 (1963); Columbia Iron & Metal Co.61 T.C. 5 (1973). * * * In the cases cited by petitioner and in similar cases decided by this Court, the regulations in issue *633 were held "procedural" or "directory" in nature. See, e.g., Taylor v. Commissioner, supra;Hewlett-Packard Co. v. Commissioner,67 T.C. 736 (1977); Columbia Iron & Metal Co. v. Commissioner,61 T.C. 5 (1973); but see Valdes v. Commissioner,60 T.C. 910 (1973); Fehr Finance Co. v. Commissioner,58 T.C. 174 (1972), affd. 487 F.2d 184 (8th Cir. 1973); National Western Life Insurance Co. v. Commissioner,54 T.C. 33 (1970). Section 20.2032A-8(a)(3), Estate Tax Regs., is not such a "procedural" or "directory" regulation. The requisite agreement is an integral part of the statutory scheme in that it subjects all qualified heirs to potential recapture tax liability. Moreover, the substantial compliance doctrine is not applicable where, as here, the statute or regulation provides with detailed specificity the manner in which an election is to be made. Taylor v. Commissioner,67 T.C. at 1080; Thorrez v. Commissioner,31 T.C. 655 (1958), affd. *634 272 F.2d 945 (6th Cir. 1959). Substantial compliance is therefore insufficient to secure the benefits of special use valuation. [Fn. ref. omitted.] Here too the substantial compliance doctrine is inapplicable in the face of the detailed statutory and regulatory provisions. While petitioner presents an appealing factual situation, a timely filed recapture agreement is a necessary prerequisite for a valid and effective election under section 2032A. There can be no "reasonable cause" exception to that requirement any more than to the requirement of a timely notice of election since both are components of a valid and effective election. Since there was no substantial compliance with the requirements of section 20.2032A- 8(a)(3), Estate Tax Regs., section 2032A(d)(3), as added to the law in 1984 and made retroactive to decedents dying after December 31, 1976, can afford petitioner no relief. [10] The purpose of section 2032A(d)(3) was to permit taxpayers to perfect, effectuate, and correct their section 2032 elections but only in cases where the estate tax return, as filed, *635 evidences substantial compliance with the requirements of the Treasury regulations. For example, merely checking the applicable box on the Federal estate tax return that an election is being made is not sufficient action by the estate to secure the benefits of the current use valuation provisions. Both a notice of election and an agreement that themselves evidence substantial compliance with the requirements of the regulations must be included with the estate tax return, as filed, if the estate is to be permitted to perfect its election. [Emphasis supplied. H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 494.] *636 As we have pointed out, the purpose of section 2032A(d)(3) is not to provide relief from the statutory requirements on timeliness but from excessively onerous enforcement of regulations; the purpose is not to give vitality to untimely or improper elections, but to permit the perfection of timely made elections which substantially comply with the requirements of the regulations. Estate of Johnson v. Commissioner, supra,89 T.C. at 132. Discussing the narrow scope of the relief afforded by section 2032A(d)(3), this Court and the Eighth Circuit, which affirmed us on this issue, pointed to the fact that the recapture agreement "as filed with the original return" must substantially comply with the regulations before it can be corrected. The corrections pertain to the addition of certain missing signatures of persons having interests of relatively small value in the property being specially valued. Estate of McDonald v. Commissioner, supra, 89 T.C. at 306-307, 853 F.2d at 1497. *637 Since a timely filed recapture agreement is one component of a valid and effective election under section 2032A, the relief provisions of section 2032A(d)(3) cannot serve to "correct" or "perfect" nunc pro tunc a wholly missing document. In Estate of McDonald a recapture agreement was timely filed but it was signed by the wrong person. Section 2032A(d)(3) did not afford a basis for "correction" of that document; a fortiori it cannot afford a basis for treating as timely filed a recapture agreement that was not timely filed. Marital Deduction
In determining the value of the taxable estate, a marital deduction is allowed for the value of any interest which passes from the decedent to the surviving spouse. Section 2056(a). However, the transfer of a life estate, or other terminable interest, to the surviving spouse does not qualify for the marital deduction if a third person has received or will receive an interest in the same property for less than adequate consideration that enables such third person to enjoy the property after the termination of the surviving spouse's *638 interest. Section 2056(b)(1). An exception to the terminable interest rule is provided by section 2056(b)(5), which provides that if the interest received by the surviving spouse is a life estate coupled with a "power of appointment," such interest qualifies for the marital deduction. However, for this exception to come into play, such power of appointment must be "exercisable by [the surviving] spouse alone and in all events." The issue is whether, under Illinois law, Mrs. Grimes received a qualifying nonterminable interest in the personal property through the will that would qualify for the marital deduction pursuant to section 2056(a). If Mrs. Grimes did not receive a qualifying nonterminable interest in the personal property, the issue becomes whether she had the power of appointment necessary under section 2056(b)(5) to qualify for the marital deduction. Respondent argues that no marital deduction should be allowed with respect to the personal property contained in Schedules B, C, and F of the estate tax return because pursuant to the Grimeses' will, Mrs. Grimes received only a nonqualifying terminable interest in that personal property. Respondent also asserts that, *639 under Illinois law, the will is a contract between the decedent and his spouse, and that upon the decedent's death, Mrs. Grimes received an irrevocable life estate in the personal property at issue with no power of appointment, thereby negating the claim for the marital deduction. Petitioner contends that the will was not a contract and that by the terms of the will Mrs. Grimes received the personal property absolutely. Therefore, petitioner concludes that Mrs. Grimes received the requisite qualifying nonterminable interest necessary under section 2056 to sustain the estate's claim to a marital deduction. The first question is whether, under Illinois law, the will is a "joint and mutual will," thereby allowing the rights of the Grimes children to vest in the personal property as of the date of the decedent's death. See generally Rauch v. Rauch,112 Ill. App. 3d 198, 445 N.E. 2d 77 (1983). A joint and mutual will is a single testamentary instrument that contains the wills of two or more persons. Bonczkowski v. Kucharski,13 Ill. 2d 443, 150 N.E. 2d 144, 148 (1958). *640 See Curry v. Cotton,356 Ill. 538, 191 N.E. 307 (1934). It is executed jointly and disposes of property in severalty, in common, or jointly by the testators. Matter of Estate of Arnold,142 Ill. App. 3d 258, 491 N.E. 2d 458, 461 (1986). A joint and mutual will must be executed pursuant to a contract between the testators, requiring their survivor to dispose of the property as the will's provisions instruct. Peck v. Drennan,411 Ill. 31, 103 N.E. 2d 63, 66 (1951). However, the joint and mutual will may itself comprise the contract. In re Estate of Schwebel,133 Ill. App. 3d 777, 479 N.E. 2d 500, 504 (1985). The mutual promises of the husband and wife as joint testators constitute sufficient consideration to effectuate their execution of a joint will with reciprocal or identical dispositions of property by each to the other and thereafter in accordance with a common plan. In re Estate of Bell,6 Ill. App. 3d 802, 286 N.E. 2d 589, 590 (1972); Cf. Matter of Estate of Arnold, supra,491 N.E. 2d at 461; Curry v. Cotton, supra,191 N.E. at 311. *641 The contract embodied in a joint and mutual will becomes irrevocable after the death of one of the testators. Freese v. Freese,49 Ill. App. 3d 1041, 364 N.E. 2d 983, 985-986 (1977); In re Edwards' Estate,3 Ill. 2d 116, 120 N.E. 2d 10, 13 (1954); See Tontz v. Heath,20 Ill. 2d 286, 170 N.E. 2d 153 (1960). Thereafter the survivor is estopped from disposing of the property other than as contemplated in the will and the rights of the third party beneficiaries vest at the death of either testator. In reEstate of Schwebel, supra,479 N.E. 2d at 504. Whether a will is a joint and mutual (contractual) will is a question of fact. In re Edwards' Estate, supra,120 N.E. 2d at 12. There are five common characteristics of a joint and mutual will that have been recognized by the Illinois courts. The five criteria are: (1) the label the testators have assigned to the will, (2) whether there are reciprocal provisions in the will, with the testators disposing *642 of their respective estates in favor of the other, (3) whether there was a pooling of jointly, commonly, and severally owned interests into one joint fund, (4) whether there is a common dispositive scheme under which the parties dispose of the common fund by bequeathing to their heirs in approximately equal shares, and (5) the use by the testators of common plural terms such as "we" and "our" as further evidence of the testators' intent to make a joint and mutual will. Rauch v. Rauch, supra,445 N.E. 2d at 80. See also Bonczkowski v. Kucharski, supra;Tontz v. Heath, supra;Helms v. Darmstatter,34 Ill. 2d 295, 215 N.E. 2d 245 (1966). The will in this case meets all five criteria. First, the Grimeses jointly executed the will which was captioned "Mutual Last Will and Testament "as well as having the identical phrase in the text. Second, the will contains reciprocal provisions throughout the second clause of the will, such as "We, and each of us, bequeath and give to the survivor of us * * *" and "Each of us gives and devises to the survivor of us * * *." Third, the testators pooled their interests into a common fund. *643 The will disposes of property owned by the testators individually, as tenants in common, and as joint tenants. The will also made reference to "all property both real and personal of ours or the survivor of us." Fourth, the common fund of assets is disposed of by a common dispositive scheme in which the Grimes children receive an equal share of the real and personal property of the estate "share and share alike." Fifth, the will uses the terms "we," "our," and "us" throughout the entire document. The presence of all five characteristics indicates that this is a joint and mutual will. Petitioner also argues that the first sentence in the second clause of the will removes the possibility that this is a joint and mutual will. That sentence reads "We, and each of us, give and bequeath to the survivor of us all the personal property owned by the first of us to die, absolutely." Petitioner further contends that "the use of the word 'absolutely' is the antithesis of any restriction" and means the survivor had complete control over the property including the power to change the dispositive scheme, therefore Mrs. Grimes, the survivor, retained the power of appointment. Petitioner's argument *644 has been rejected several times by the courts of Illinois. See Rauch v. Rauch, supra;In re Estate of Bell, supra;Helms v. Darmstatter, supra;Curry v. Cotton, supra. The Illinois Supreme Court in Helms v. Darmstatter ruled that the clause of the joint will executed by the husband and wife bequeathing their estate to the survivor of the other "absolutely" was required to be read with the other clause directing that the testators' entire estate be merged into a common corpus and distributed and treated as one estate for the benefit of various relatives. Helms v. Darmstatter, supra,215 N.E. 2d at 249. That case held that where equal treatment for the family is provided in the will, it would be illogical to interpret the will as giving the survivor the power to upset the dispositive scheme. Here, as in Helms, all terms of the Grimeses' will must be read together. Since the Grimeses' will provided for equal treatment among their children upon the death of the survivor and the childrens' interests vested *645 at the time of the decedent's death, Mrs. Grimes received a life estate in the personal property with the remainder to the children. Therefore, Mrs. Grimes received a nonqualifying terminable interest by the terms of section 2056(a). The question then becomes whether Mrs. Grimes received a power of appointment coupled with her life estate, because under section 2056(b)(5), a life estate coupled with the requisite power of appointment qualifies for the marital deduction. In accordance with section 20.2056(b)-5(a), Estate Tax Regs., the interest that passes to Mrs. Grimes may be a deductible interest to the extent it satisfies all five of the conditions set forth below: (1) The surviving spouse must be entitled for life to all of the income from the entire interest or a specific portion of the entire interest, or to a specific portion of all the income from the entire estate. (2) The income payable to the surviving spouse must be payable annually or at more frequent intervals. (3) The surviving spouse must have the power to appoint the entire interest or the specific portion to either *646 herself or her estate. (4) The power in the surviving spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events. (5) The entire interest or the specific portion must not be subject to a power in any other person to appoint any part to any person other than the surviving spouse. The will here failed to satisfy at least the third and fourth criteria. That Mrs. Grimes had a life estate in the personal property and that such life estate was not coupled with a power of appointment are shown by a careful reading of the first three sentences of the second clause of the will. The first three sentences of the second clause of the Grimeses' will read as follows: SECOND: We, and each of us, give and bequeath to the survivor of us all the personal property owned by the first of us to die, absolutely. Each of us gives and devises to the survivor of us a life estate in the real estate owned by the first of us to die, with remainder in fee to our four children * * * share and share alike. In the event we should die as a result of a common catastrophe, or in any event at the death of the survivor of us, then all property *647 both personal and real of ours or the survivor of us as the case may be to our said four children, share and share alike, * * * Petitioner says the first sentence gives the survivor the personal property of the first to die "absolutely" and that the second sentence gives the survivor a life estate only in the real property of the first to die, with remainder in fee to the children. If the second clause contained only the first two sentences, petitioner's argument might well be taken. However, we must read the document as a whole and give meaning to all its parts, particularly as to the disposition contemplated after the death of the survivor. Respondent points to the third sentence of the second clause as showing that the will covered the spouses' disposition of both real and personal property under a common plan. Respondent argues that the third sentence shows that the will gave the survivor a life estate in both personal and real property. Petitioner replies that respondent fails to give effect to the "as the case may be" language of that third sentence. The third sentence is perhaps inartfully drawn and lacks a subject and verb. The sentence no doubt implicitly contains *648 the language "We, and each of us, give, bequeath and devise." Breaking that third sentence into two separate sentences to give effect to the "as the case may be" language and adding what we think is the unspoken subject and verb produce the following two independent sentences: 1) In the event we should die as a result of a common catastrophe, * * * then [we, and each of us, give, bequeath, and devise] all property both personal and real of ours * * * to our said four children, share and share alike * * * 2) [O]r in any event at the death of the survivor of us, then [we, and each of us, give, bequeath and devise] all property both personal and real of * * * the survivor of us as the case may be to our said four children, share and share alike * * * Giving effect to all of the language in the third sentence, particularly the "as the case may be" alternate, we are satisfied that this will is a joint and mutual will, that under Illinois law the survivor of the first to die cannot dispose of either the personal property or the real property "at her discretion," as petitioner argues. *649 Instead the survivor has a duty to preserve the estate, has only a limited right to invade the corpus, and the survivor's ability to dispose of that property is restricted, i.e., that property must be disposed of according to the will's direction or common plan. Estate of Grimes v. Commissioner,851 F.2d 1005 (7th Cir. 1988), affg. T.C. Memo. 1987-379. Since the contract contained within a joint and mutual will becomes irrevocable upon the death of the first testator, the interests of the Grimes children became vested at the date of the decedent's death on December 25, 1980. Estate of Grimes v. Commissioner, supra. Thus, Mrs. Grimes' power, if any, was not exercisable by her alone nor was it exercisable "in all events," within the meaning of section 20.2056(b)-5(a), Estate Tax Regs. Therefore, she had no power of appointment with respect to the personal property, but instead was bound by the common plan of disposition set out in the will. Since Mrs. Grimes received only a life estate in the property, and since she had no power of appointment, *650 she had only a nonqualifying terminable interest. Therefore, the estate is not entitled to a marital deduction with respect to the Schedules B, C, and F personal property. To reflect the concessions of the parties, stipulations to be bound, and the above holdings, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect at the time of the decedent's death or at the time the estate tax return was filed, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties have agreed to be bound by the decision in Estate of [Jesse L.] Grimes v. Commissioner,851 F.2d 1005 (7th Cir. 1988), affg. T.C. Memo. 1987-379↩, that involved the estate of the decedent's father. The outcome of that case determined, inter alia, the type of interest the decedent possessed in various property. These interests will be taken into account in the parties' Rule 155 computations.
3. Since Mr. Gammage died prior to trial, the facts regarding this discussion of the will are based on Mrs. Grimes' testimony at trial. While Mrs. Grimes never discussed a contractual will with Mr. Gammage, she was present when the decedent discussed the will with him in the Grimeses' home in September 1980. Mrs. Grimes also testified at trial that it was the decedent's intention that a life estate in the real property be left to the survivor of the first of them to die with a remainder interest to the children. She further testified that all of the personal property was to be left absolutely to the surviving spouse to be distributed at the survivor's discretion. However, Mrs. Grimes could not remember if the provisions of the will in regard to the personal property were discussed with Mr. Gammage. We do not rely on Mrs. Grimes' testimony in construing the will. As the Seventh Circuit noted in Estate of Grimes v. Commissioner, supra, such extrinsic evidence should not be considered since "Illinois law is clear that the intentions of testators must be drawn from the four corners of the will." 851 F.2d at 1006↩ n.3. Moreover, Mrs. Grimes' testimony was too vague and conclusory to furnish any basis for going beyond the four corners of the will itself.
4. The parties have stipulated that Mrs. Grimes "timely filed" the estate tax return on that date. The return was date-stamped received at the Kansas City Service Center on September 28, 1981, so it is apparent that the return was timely mailed on September 24, 1981 and that such timely mailing constituted timely filing. Sec. 7502.↩
5. Mr. Gammage had died in September of 1986 before the trial. His son, the other member of this small, two-person law firm, testified at the trial but was not examined in regard to this inadvertent omission. It is clear that Mr. Gammage had the executed recapture agreement in his possession and simply failed to include it when the various documents accompanying the Form 706 were assembled and mailed on September 24, 1981. See n.4., supra.↩
6. Revenue Procedure 74-5 provides that a case may be reopened if "the prior closing involved a clearly defined substantial error based on an established Service position * * *" or other circumstances exist which would indicate failure to reopen would be a serious administrative omission. Rev. Proc. 74-5, section 4, 1974-1 C.B. 416↩.
7. See also Estate of Nesselrodt v. Commissioner,T.C. Memo. 1988-489; Estate of Killion v. Commissioner,T.C. Memo. 1988-244↩.
8. In 1981, Congress amended section 2032A(d)(1) to allow election of special use valuation to be made on the first estate tax return filed by the estate, whether or not timely filed. Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 421(j)(3), 95 Stat. 313. However, the amendment was made effective only as to decedents dying after↩ December 31, 1981, and hence is not applicable here. In any event, the estate tax return was timely filed in this case.
9. Apparently there was such a recapture agreement then in existence, since a recapture agreement dated April 14, 1982 was attached to the amended return filed on September 23, 1982. The Court in that case did not expressly find as a fact, as we have found here, that the recapture agreement was executed by the qualified heirs before the original estate tax return was filed. However, silence on that point suggests that the agreement was filed. However, silence on that point suggests that the agreement was regular on its face and properly executed. In any event, a possible minor factual variation of that nature affords us no principled basis for departing from the holding of that case.↩
10. In 1984 Congress amended section 2032A to add section 2032A(d)(3). Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 1025(b)(1), 98 Stat. 494, 1030-1031. Section 2032A(d)(3) provides as follows: (3) MODIFICATION OF ELECTION AND AGREEMENT TO BE PERMITTED. -- The Secretary shall prescribe procedures which provide that in any case in which -- (A) the executor makes an election under paragraph (1) within the time prescribed for filing such election, and -- (B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but -- (i) the notice of election, as filed, does not contain all required information, or (ii) signatures of 1 or more persons required to enter into the agreement described in paragraph (2) are not included on the agreement as filed, or the agreement does not contain all required information, the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.↩