WALTER F. AND BETTY E. BARTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barton v. Commissioner
Docket No. 20553-85.
United States Tax Court
T.C. Memo 1992-118; 1992 Tax Ct. Memo LEXIS 139; 63 T.C.M. (CCH) 2202; T.C.M. (RIA) 92118; February 26, 1992, Filed *139 Decision will be entered accordingly. Roger A. Pies, for petitioners. James F. Kearney and Kathleen E. Whatley, for respondent. SCOTT
SCOTT
MEMORANDUM OPINION SCOTT, Judge: This case is before us pursuant to the mandate of the United States Court of Appeals for the Eleventh Circuit issued June 20, 1990, in which the Circuit Court ordered that further proceedings in accordance with its opinion, Barton v. Commissioner, 893 F.2d 306 (11th Cir. 1990), vacating and remanding T.C. Memo. 1988-396, be held. In its opinion filed January 29, 1990, the Eleventh Circuit stated that "Because the meaning and effect of the Amendment [to the nonrecourse installment note] is crucial to the determination of whether Mr. Barton was ever at-risk, we must remand this issue so that the Tax Court may receive and consider all relevant evidence the parties have to offer with respect to the meaning of the word 'rescind' in the Amendment." Barton v. Commissioner, supra at 309. In concluding its opinion, the Eleventh Circuit stated: Because the Tax Court failed to consider relevant evidence on an issue which might be dispositive *140 of the case, and because the Tax Court based its analysis on a misunderstanding of the facts of the case, the decision of the Tax Court is VACATED * * *. We remand the case for the Tax Court to start with a clean slate. None of the factual statements in this opinion are binding upon the Tax Court. Because of the complexity of the transactions, we suggest to the Tax Court that it not proceed upon a stipulation of facts by the parties nor upon the documents alone. To give meaning to the transactions, it will be necessary for the Tax Court to take evidence from the persons who structured the various transactions. [Barton v. Commissioner, supra at 311].
Petitioners on February 20, 1990, filed a motion for rehearing in the Court of Appeals for the Eleventh Circuit in which they argued that it was improper for the Eleventh Circuit to refuse to decide the question of the proper interpretation of the word "rescind" contained in the amendment to the installment note based upon the stipulated record, but instead to remand the case for the Tax Court to receive and consider all relevant evidence on this issue; and that the Eleventh Circuit should have determined *141 what rights St. Joseph Equity would have against Mr. Barton if TRW defaulted on its rental payments. In the motion for rehearing appellants (petitioners in the present case) argued that the questions involved in the case were questions of law and that respondent had assumed the burden of proof. By order entered June 11, 1990, the Court of Appeals for the Eleventh Circuit denied petitioners' motion for rehearing. By order dated June 29, 1990, this Court calendared this case for trial pursuant to the mandate of the Court of Appeals for the Eleventh Circuit. The Court entered a pretrial order on July 13, 1990, setting forth a procedure for the parties to follow in preparation for trial and stating that a pretrial conference would be held if requested. Pursuant to request, the Court set a pretrial conference for the morning of October 19, 1990, but late in the afternoon on October 17, 1990, counsel for petitioners stated his unwillingness to attend an informal conference at which no Court reporter would be present, and the conference was canceled. The Court then on October 19, 1990, entered a supplemental pretrial order in which it ordered among other things that petitioners at *142 the trial then scheduled for November 19, 1990, should proceed first with their evidence. Petitioners on October 25, 1990, filed a motion to fix burden of proof in which they requested that the Court rule that the burden of proof on whether petitioners were at risk with respect to an installment note of $ 570,000 was on respondent. After briefs by the parties and oral argument, this Court ruled that the burden was on petitioners to establish that they were at risk within the meaning of section 465[1] with respect to some portion of the installment note for $ 570,000 and the amount for which they were at risk. Thereafter a number of motions were filed by the parties with respect to the burden of proof question and what part of the stipulations of facts received at the original trial of the case should be a part of the record at the trial on remand. Arguments of the parties with respect to these motions were heard. After considering these arguments, the Court ordered that all of the stipulations of facts filed in this case at the original trial in 1987, except the portions which were concessions by respondent of certain issues and certain amounts of the deficiencies and additions *143 to tax determined in the notice of deficiency, were stricken. This Court also ruled that respondent remained bound by the portion of the stipulation which limited the issue in this case to whether petitioners were at risk with respect to any portion of the $ 570,000 installment note under section 465(b). When the case was called for trial in Atlanta, petitioners proposed a settlement of the issue remaining in the case, and after discussion between counsel for petitioners and respondent, a document was filed with the Court outlining a basis for settlement which involved obtaining consent of the taxpayers who had agreed to be bound by the decision in this case to become unbound. The settlement did not materialize and this case was set for trial in Washington, D.C., on a special session of the Court on September 30, 1991. *144 Numerous pretrial motions were filed by each party and ruled on by the Court prior to the trial date. When the case was called for trial on September 30, 1991, counsel for petitioners appeared and again contended that the burden of proof was on respondent in this case. Shortly prior to the date of trial, petitioners filed a notice that they planned to take this position and therefore would offer no evidence at the trial on September 30, 1991. When the case was called for trial, counsel for petitioners offered no evidence other than certain documents which he contended would show that respondent had agreed to bear the burden of proof in this case. These documents were not received in evidence since petitioners had made no allegations of estoppel. Counsel for petitioners again stated that he would offer no evidence on the substantive issues on behalf of petitioners and rested his case. Counsel for respondent offered no evidence, and except for pointing out certain jurisdictional facts established by the pleadings, rested his case. The parties were permitted to file briefs. In these briefs the parties again argue the issue of the burden of proof and also argue whether the issue *145 in this case should be limited to the at-risk issue. This Court had previously ruled in denying respondent's motion to file a second amendment to answer, that the remand of this case by the Eleventh Circuit was for a de novo trial on the at-risk issue only. Nothing in the arguments in the parties' briefs changes this Court's view that respondent is bound by previously stipulated concessions and the only issue to be litigated in the case is the extent, if any, to which petitioners were at risk with respect to the $ 570,000 installment note. This means that there is no deficiency in issue with respect to the year 1981 and the deficiency in issue with respect to the year 1982 is $ 28,526. The facts as established by allegations in the petition in this case, which were admitted in the answer, show that petitioners resided in Atlanta, Georgia, at the time the petition in this case was filed. They filed joint Federal income tax returns for the years 1981 and 1982 with the Internal Revenue Service Center in Chamblee, Georgia. On April 3, 1985, respondent mailed a notice of deficiency to petitioners determining deficiencies in petitioners' Federal income tax for the calendar years 1981 *146 and 1982 in the amounts of $ 112,411 and $ 135,051, respectively. The notice also determined additions to tax under sections 6653(a)(1) and (2) and 6659. The inapplicability of the additions to tax were part of the concessions previously made by respondent. The stipulation conceding the issue of the additions to tax was part of the stipulations of concessions which were not stricken by the Court when all the factual stipulations were stricken. In the notice of deficiency for the year 1981, respondent disallowed a claimed deduction of $ 105,000 described as "St. Joseph depreciation" and for the year 1982 disallowed a claimed deduction in the amount of $ 235,314, which he described as "St. Joseph expenses". Under Explanation of Adjustments the sole explanation of these adjustments is "St. Joseph. See the attached Engineering and Valuation Report dated November 17, 1983". There is attached to the notice of deficiency a 13-page document to which is attached a page entitled Schedule A Equipment. The 13-page document is entitled Engineering and Valuation Report. The years are stated to be the calendar years 1981 and 1982 and under Issues is stated: "Computer purchase-leaseback *147 tax tax shelter. Transaction disregarded for tax purposes. Depreciation disallowed, interest disallowed, other expenses disallowed". Under Summary of Recommendations appears: "Claimed Expenses 8112 $ 105,000, 8212 $ 235,314, Recommended Expenses 0 and 0, Adjustment $ 105,000 and $ 235,314, Claimed Depreciable Basis $ 700,000, Recommended Depreciable Basis O". The first part of the document is entitled Introduction. On page 3 of the document is the heading "Facts". The fifth item under "Facts" is "Terms". Under this item it is stated that -- On November 25, 1981, the taxpayer purchased the equipment from and simultaneously leased it back to St. Joseph. The length of the transaction is approximately eight years beginning November 25, 1981 and continuing through November 30, 1989. The taxpayer's purchase price of $ 700,000 was satisfied by paying $ 20,000 initial cash down and by giving two notes back to the seller, a $ 110,000 Promissory Note (equity note) and a $ 570,000 Installment Note (nonrecourse note).
In the middle of page 4 the following statement appears: "The taxpayer's $ 570,000 nonrecourse Installment Note is payable with interest at 15% per *148 year as follows: $ 10,102.60 per month in advance for 95 months beginning December 1, 1981 and continuing through October 1, 1989 plus one final payment of $ 10,102.35 on November 1, 1989". In the middle of page 6 appears the heading "Discussion". On page 9 appears the heading "Law and Conclusions" and under this heading on page 10 appears the statement "the taxpayer financed its purchase with a four year promissory note and an eight year nonrecourse note". A few lines further down on page 10 appears the statement: "the taxpayer's rental receipts from the leaseback will amortize its nonrecourse note payments and provide a small monthly cash flow". Still further down appears the statement: "the taxpayer's nonrecourse note is in excess of the fair market value of its equipment". Under the heading "Recommendations" at the bottom of page 12 in this document appears the statement: "It is also recommended that the taxpayer's nonrecourse note is not includible in basis because it fails to meet the characteristics of a true lending transaction". Section 465, entitled "Deductions Limited to Amount at Risk", provides with respect to individuals engaged in an activity to which *149 the section applies that any loss from such activity for the taxable year shall be allowed only to the extent of the aggregate amount with respect to which the taxpayer is at risk within the meaning of subsection (b) for such activity at the close of the taxable year. Section 465(b) under the heading "Amounts Considered at Risk" states that for the purposes of this section a taxpayer is considered at risk for an activity with respect to amounts of money and adjusted basis of other property contributed by the taxpayer to the activity, and amounts borrowed with respect to such activity as determined under paragraph (2). Section 465(b)(2) provides that a taxpayer shall be considered at risk with respect to amounts borrowed for use in an activity to the extent that he is personally liable for the repayment of such amounts or has pledged property, other than the property used in the activity, as security for such amount to the extent of the net fair market value of the taxpayer's interest in such property. Section 465(b)(3) excludes from amounts at risk amounts borrowed from any person who has an interest in such activity other than as a creditor. Section 465(b)(4), which is the section *150 primarily here in issue, provides as follows: (4) EXCEPTION. -- Notwithstanding any other provision of this section, a taxpayer shall not be considered at risk with respect to amounts protected against loss through nonrecourse financing, guarantees, stop loss agreements, or other similar arrangements.
We are therefore here confronted with whether the notice of deficiency was broad enough to encompass respondent's position in this case that petitioner was not at risk with respect to any part of the $ 570,000 installment note or if there was a sufficient statement in the notice of deficiency to clearly put petitioners on notice that respondent did not consider them at risk with respect to any portion of the $ 570,000 installment note. The parties have cited and discussed numerous cases. There are many cases of this Court and other courts determining as a factual matter whether allegations in an answer, amended answer, or amendment to answer filed by respondent raise new matter with respect to which respondent has the burden of proof or merely amplify a determination already inherent in the notice. Rule 142(a) provides that -- The burden of proof shall be upon the petitioner, *151 except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon the respondent. As to affirmative defenses, see Rule 39.
In the instant case respondent on June 11, 1987, filed a first amendment to answer in which he added paragraph 7 after paragraph 6 of the answer he had previously filed, alleging as follows: 7. FURTHER ANSWERING the petition, and in support of respondent's claim that for the taxable year 1982, no deductions should be allowed the petitioners with respect to the St. Joseph Leasing activity under the provisions of I.R.C. section 465, the respondent alleges: * * * e) The petitioners were not at risk within the meaning of I.R.C. section 465(b)(4) with respect to their St. Joseph Leasing activity at the close of taxable year 1982 since the Installment Note Amendment protects the petitioners against loss through a stop loss agreement or other similar arrangement.
WHEREFORE, it is prayed: (1) That the relief sought in the petition be denied; (2) That the deficiencies in income tax for the taxable years 1981 and *152 1982 as set forth in the statutory notice, be in all respects approved; and, (3) That the Court determine that the petitioners were not at risk with respect to their St. Joseph Leasing activity at the close of the taxable year 1982.
Respondent claimed no increased deficiency in the first amendment to answer and therefore the portion of Rule 142(a) that places the burden on respondent with respect to a claimed increased deficiency is not applicable here. In fact the prayer in the answer asks for the deficiencies as determined in the notice. Later in connection with the trial of this case respondent conceded a number of issues that substantially reduced the amount of the deficiency. However, there is nothing in respondent's first amendment to answer that in any way alters the original deficiency. The at-risk allegation is stated in the answer to be "in support of respondent's claim that no deductions should be allowed to petitioners with respect to the St. Joseph Leasing activity". When respondent later conceded certain other issues, the deficiency was reduced. However, respondent's first amendment to answer did not alter the original deficiency. See Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989). *153 Furthermore, the numerous cases on the subject of "altering the deficiency" make it clear that when a new theory in support of the deficiency determined is alleged that does not specifically allege an alteration of the deficiency, the allegation is not considered "new matter" merely because respondent later makes concessions that reduce the deficiency determined in the notice of deficiency. See Virginia Education Fund v. Commissioner, 85 T.C. 743, 751 (1985), affd. per curiam 799 F.2d 903 (4th Cir. 1986). The cases relied upon by petitioners involve either a claim for an increased deficiency or affirmative allegations by respondent which are inconsistent with the determination made in the notice of deficiency. Neither of these factual circumstances are present here and for that reason those cases are distinguishable from the present case. Clearly, also, the allegation in respondent's first amendment to answer does not constitute an affirmative defense within the meaning of Rule 142(a). The reference in Rule 142(a) to Rule 39 makes it clear that affirmative defense refers to such matters as res judicata, collateral estoppel, estoppel, waiver, *154 duress, fraud, and the statute of limitations. Based on the facts in this record we do not consider the allegation in respondent's first amendment to answer to constitute "new matter" within the meaning of Rule 142(a). New matter does not refer to allegations that are merely a refinement of a theory or limitation on a theory already set forth in the notice of deficiency but rather refers to a theory which is inconsistent with the determination in the deficiency notice. Estate of Jayne v. Commissioner, 61 T.C. 744, 749 (1974). In that case we pointed out that we had held that a new position taken by respondent is not new matter when it merely clarifies or develops the original determination without being inconsistent or increasing the amount of the deficiency. Here the notice of deficiency, without consideration of the Engineering and Valuation Report attached, was so broad as to permit respondent to rely on any theory to support the disallowance of petitioners' claimed deductions with respect to St. Joseph Leasing. When the Engineering and Valuation Report is considered a part of the notice of deficiency in that it is the explanation of the adjustments, it *155 is clear that that report found that the $ 570,000 installment note was nonrecourse. This finding was reiterated throughout the Engineering and Valuation Report. As set forth in section 465 and particularly in section 465(b)(4) above quoted, the statute provides that a taxpayer is not at risk with respect to financing which is nonrecourse. Therefore an allegation that petitioners are not at risk on the note here involved is consistent with the finding in the notice of deficiency that the installment note is nonrecourse. While it probably would not have been necessary for respondent to file an amendment to answer to have the at-risk issue be considered in this case under the determination in the notice of deficiency, he certainly is not to be penalized for specifically drawing the fact that he is relying on the at-risk provisions of the statute to petitioners' attention by an amendment to answer. See the discussion in Stewart v. Commissioner, 714 F.2d 977, 990-991 (9th Cir. 1983), affg. T.C. Memo. 1982-209, in which it was held that respondent could raise an issue of substance over form without bearing the burden of proof with respect to the *156 issue where the notice had initially been a notice allocating sale proceeds under section 482 by notifying the taxpayer in his trial memorandum that he intended to rely on a substance-over-form argument. The court in that case stated that the taxpayer was not surprised because notice was given that respondent intended to rely on the substance-over-form doctrine. The court then stated -- It is well settled that the assertion of a new theory that merely clarifies the original determination, without requiring the presentation of different evidence, does not shift the burden of proof. See Achiro v. Commissioner, 77 T.C. 881, 890 (1981). For the reasons stated above, we affirm the Tax Court's conclusion that the substance-over-form doctrine is so closely related to the statute earlier relied upon by the Commissioner that the Commissioner's invocation of the doctrine does not constitute a new matter; the burden of proof therefore remains on the taxpayer. See Abatti v. Commissioner, 644 F.2d 1385, 1390 (9th Cir. 1981). [Stewart v. Commissioner, supra at 990-991.]
The Ninth Circuit's opinion contains a discussion *157 of why there is sufficient relationship between the substance-over-form doctrine and section 482 relied on in the notice of deficiency for a substance-over-form doctrine not to constitute new matter. Petitioners further argue that section 465 was not mentioned in the notice of deficiency. It is not necessary that respondent mention the section of the Code governing a disallowance in the deficiency notice. A determination that the $ 570,000 installment note was nonrecourse was a determination that petitioners were not at risk with respect to this amount whether any section of the Internal Revenue Code was mentioned or not. Also, we have held that for respondent to change the section of the Code on which he relies does not cause the assertion of the new theory to be new matter if the section relied on is consistent with the determination made in the deficiency notice relying on another section of the Code. Estate of Emerson v. Commissioner, 67 T.C. 612, 620 (1977). In Estate of Emerson, we stated -- Petitioner argues that, under Rule 142(a), Tax Court Rules of Practice and Procedure, the burden of proof shifts to the respondent on his asserted section *158 2033 theory because this theory is "new matter" pleaded by the respondent in his amended answer. It is well settled that respondent is treated as having introduced a "new matter" where his answer alters the amount of the original deficiency, requires the presentation of different evidence, or is inconsistent with his original determination. Sanderling, Inc., 66 T.C. 743 (1976), and cases cited therein. In the instant case, respondent's alternative legal position under section 2033 does not alter the amount of the original deficiency nor does it require the presentation of new evidence since the validity of respondent's theories under both sections 2033 and 2036 depends upon the legal effect, under Texas law, of the joint and mutual will upon the death of Zac's wife, Lois. Moreover, the theories are not inconsistent, for inherent in both is the notion that decedent possessed and enjoyed the property in question, or the right to income therefrom, during his lifetime. * * * [Estate of Emerson v. Commissioner, supra at 620.]
Here the determination that the $ 570,000 installment note was nonrecourse made in the notice of deficiency *159 would require that petitioners present the same evidence to show that they were personally liable on some amount of that installment note that the at-risk theory alleged in respondent's first amendment to answer would require. In fact the determination that the entire note was nonrecourse required that petitioners show both that the note was amended to designate a portion of the note as recourse and that the amendment did in fact place on petitioners a personal liability and the extent of that liability. Here the allegation in respondent's first amendment to answer that petitioners were not at risk within the meaning of section 465(b)(4) is totally consistent with the determination in the notice of deficiency that the $ 570,000 installment note was nonrecourse. In our view the notice of deficiency, considering the Engineering and Valuation Report to be a part thereof, made a determination that petitioners' $ 570,000 installment note was nonrecourse and therefore effectively determined that petitioners were not at risk with respect to that amount of the purchase price of the computer equipment. Thus petitioners have the burden to show that there was no basis for the disallowance *160 including that petitioners were at risk with respect to the installment note. In Sorin v. Commissioner, 29 T.C. 959 (1958), affd. per curiam 271 F.2d 741 (2d Cir. 1959), we stated at 968-970 -- Respondent determined in the deficiency notice that the distribution in controversy "is fully taxable to you at ordinary income tax rates under the provisions of the Internal Revenue Code of 1939." Petitioners contend that this is essentially identical with what happened in Thomas Wilson, 25 T.C. 1058, where the deficiency determined was that the amount received (p. 1062) "was ordinary income under section 22(a)," I.R.C. 1939, and later resort to section 117(m) was held to place the burden on respondent. We think the situations are radically different and that W.H. Weaver, 25 T.C. 1067, 1085, decided on authority of Thomas Wilson, supra, and on which petitioners also rely, in fact, more nearly supports respondent's position. It is one thing for respondent to pinpoint the basis of his determination as he did in the Wilson and Weaver cases. In that situation it is not reasonable to permit him, *161 without notice, to rely on some different and previously undisclosed ground. Helvering v. Wood, 309 U.S. 344. He is required under those circumstances to amend his answer sufficiently in advance of the trial if he wishes to raise a new issue. Because the original determination is not broad enough to include the new ground, its presumptive correctness does not then extend to such new matter, which he is required to raise affirmatively in his answer. Under the Tax Court rules, the burden of proof as to it is expressly placed on respondent. Rule 32 [now Rule 142(a)], Tax Court Rules of Practice (Jan. 15, 1957). But when the determination is made in indefinite and general terms, and is not inconsistent with some position necessarily implicit in the determination itself, the situation is quite different. "The petitioner may not, without an expressly pleaded admission or stipulation, treat the notice as an official acquiescence by the Commissioner in all petitioner's propositions as to this item except those expressly determined adversely to him." * * * Nor can it be successfully argued that the language employed in the deficiency notice directly or by necessary *162 inference excluded the claim upon which at the trial respondent elected to proceed. Not only was there an absence of reference in the notice to any specific section * * * but the language used was peculiarly appropriate to a controversy under section 117(m). It was not that this was ordinary income as would be the case with sections 22(a) or 115(a), but merely that it was "taxable at ordinary income tax rates." This is entirely consistent with section 117(m). And while the distribution in its entirety was the subject of the deficiency, this would be as true under section 117(m) if the stockholders' basis was zero as if the total amount was ordinary income under sections 22(a) or 115(a), or both. The provision that section 117(m) applies to "gain" would require taxation of the entire receipt if the basis is zero. And nothing in that section or anywhere else relieves the taxpayer of the obligation of proving his basis or prevents respondent from assuming that the basis is zero in the absence of a contrary showing. [Fn. refs. and citations omitted.]
Sorin v. Commissioner, supra, has been cited innumerable times for the proposition that where the deficiency *163 notice is broad respondent can rely on any theory not inconsistent with that broad determination. See Reese v. Commissioner, 615 F.2d 226, 233 (5th Cir. 1980), affg. T.C. Memo. 1976-275, in which the court stated with respect to a notice of deficiency that -- when the determination is made in general and indefinite terms, the taxpayer is reasonably placed on notice that the basic elements of a claimed deduction, including its fact, amount and character, are in dispute. See Sorin v. Commissioner, 29 T.C. 959, 969 (1958), aff'd, 271 F.2d 741 (2d Cir. 1959). The burden then shifts to the taxpayer to prove all aspects of the loss and overcome the presumptive correctness of the Commissioner's determination. * * *
We conclude in this case that petitioners were notified in the notice of deficiency that they were not at risk with respect to the $ 570,000 installment note which the Commissioner determined was nonrecourse and therefore the burden of showing that that note or some part of it was recourse was on petitioners. Finally, as petitioners recognize, the Eleventh Circuit in vacating our decision in *164 this case and remanding the case for a trial de novo made no mention of the burden of proof. Rather the Eleventh Circuit directed this Court to hear all evidence with respect to the entire transaction involved in this case, including all transfers or assignments of notes or leases, as well as all information with respect to the original installment note and the amendment of that note. The Court of Appeals stated that it would be "necessary for the Tax Court to take evidence from the persons who structured the various transactions". Barton v. Commissioner, 893 F.2d at 311. Logically that evidence should come from petitioners. Such directions are consistent with our conclusion that the burden of proof to show that petitioners were personally liable for some part of the installment note was on petitioners. We therefore hold that petitioners have the burden of proof in this case. Because of their refusal to offer any evidence on the substantive issue of whether petitioners were at risk with respect to any portion of the $ 570,000 installment note, we decide that issue against them. Rule 149(b). This decision results in a determination of no deficiency for the *165 year 1981 and a deficiency of $ 28,526 for the year 1982. Decision will be entered accordingly. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩